## SPRING vs. SANDFORD and others.

Where real estate is sold by a master, under a decree of the court of chancery, as and for a good title, the purchaser is only entitled to such a title as a purchaser of the premises at a private sale would be bound to receive from his vendor.

It is no valid objection to the title, under a decree in partition between the heirs at law of the person who died seized of the premises, that the suit for the partition thereof was commenced within the four years allowed by law for proving and recording a will of real estate; unless there is some reasonable grounds for supposing that the decedent actually made a will which has changed the course of the descent.

A bill for the partition of lands among the devisees or heirs at law of a testator or intestate, may be filed within the three years allowed by law to the creditors to apply to the surrogate for an order of sale. And a purchaser under the decree will be compelled to take the title if it appears that there are no debts, or that the personal property is an ample fund to pay all claims against the estate of the decedent.

Where the interest of one of the defendants in the premises, in a partition suit, is sold under a judgment at law against him, subsequent to the filing of the complainant's bill and the notice of the pendency of the suit for partition, the purchaser must come in before the master and prove his claim, under the order of reference as to general liens; as his interest in the premises will be divested by a sale under the decree.

It is a fatal objection to the title derived under a decree in partition, that the complainant was a feme covert, and that her husband was not joined with her as a party to the suit. And where it appeared, from the affidavits on the part of the purchaser, to be a matter of doubt whether the complainant was not a married woman, a marriage in fact having been solemnized between her and a man who claimed to be her husband, the chancellor refused to compel the purchaser to take the title, until the complainant should have established the fact, upon a reference, that the alleged marriage was illegal and void.

May 7.       THIS case came before the chancellor upon the several appeals of J. Cook and F. Sebert, two of the purchasers at the master's sale under the decree in this cause, from an order of the vice chancellor of the first circuit refusing to discharge the appellants from their purchases. Several objections were made to the validity of the title to be acquired under the master's sale, all of which were overruled by the vice chancellor; and the appellants were ordered to complete their purchases.

*P. De Witt & R. L. Scheiffelin*, for the appellants. The purchaser is not bound to take a doubtful or questionable title, or one that would subject him to a law suit. (2 *Paige's Rep.* 586.) Several objections exist to the title of the premises sold by the master. The bill for partition was filed by one of the heirs at law only twenty days after the death of the ancestor, M. Sandford. The title under the decree may be defeated, if within four years from the death of the ancestor, a will should be produced and proved, giving the estate to any others than the parties to the suit; or in case a larger or more advantageous provision should be made therein for the infants. (1 *R. S.* 748.) The title will also be defeated in case the creditors of the deceased shall, within three years from the death of the ancestor, take proceedings before the surrogate, and sell his real estate for the payment of his debts. (2 *R. S.* 108, 454. 2 *Paige's Rep.* 592. 1 *Edw. Ch. Rep.* 570.) The right and title of Oakley, one of the defendants, to the premises had been sold under a judgment against him, and a certificate of such sale was duly filed, previous to the time when the master advertised for general liens.

Again; the complainant, at the time of filing the bill for partition, was the wife of Slocum, who is still living. The proceedings in partition are therefore irregular and void.

*Charles Edwards*, for complainant. The possibility of a creditor suing an heir is not enough to prevent a partition of the estate of the decedent. In the present case, the ancestor left no debts unpaid. Even in ordinary cases, the land which an heir takes is not liable if such land has been aliened. Now, the sale under a decree in partition is a species of alienation through the decree of the court. (2 *R. S.* 454, § 47.) The statute fixes no time for the commencement of proceedings in partition. They may be commenced by an heir at law the day after the death of the ancestor. The purchasers in this case show nothing which leads to the presumption that there are any debts which are a lien upon the premises. The interest acquired by the

1839.

Spring
v.
Sandford.

sale under the judgment against James B. Oakley, if worth any thing, attaches to his share only. But even this is doubtful. (4 *Paige's Rep.* 441.) The complainant is not the wife of Slocum. This appears by her affidavit. Her marriage with him was unlawful, and void ab initio. (*Fenton* v. *Reed*, 4 *John. Rep.* 52. 1 *Roll. Ab.* 340, *pl.* 2; 357, *pl.* 40. 2 *R. S.* 139, § 5. *Cro. Eliz.* 858. 1 *Salk.* 120.)

THE CHANCELLOR. Some of the objections to the title in this case, which involve no legal principle but depend for their support upon mere questions of fact, would have been proper subjects of a reference to a master if the purchasers had sworn even to their belief of the existence of a state of facts which would necessarily render the title to be acquired under the master's deed invalid. But the court, in giving a title to the purchaser, does not undertake to give a title which can by no possible state of facts be defeated. It only assumes to give such a title as a purchaser at a private sale could not legally object to receive. Applying this principle to the objections made to the title in this case, I do not see that they can be sustained, with but one exception; as I can see nothing in the facts of the case which renders it probable that the appellants will not obtain valid titles to the lots purchased by them respectively, unless it should turn out that the complainant is in fact a feme covert.

The first objection is that the bill for partition was filed very soon after the death of the intestate and before the expiration of the four years allowed by law for proving and recording a will of real estate. The object of the statute requiring wills to be recorded was not to suspend the power of selling the estate by the heir at law in the meantime, but it was to protect purchasers against secret wills which might afterwards be set up to defeat their titles. And as there is nothing in this case from which it can be inferred that there is any will in existence, that objection to the title was properly overruled.

Although the master's report upon the title is not conclusive, it is prima facie evidence at least that the testator made no will changing the course of descent; and it lies upon

the purchaser to satisfy the court that there is a probability that a will had been made. If he had sworn to his belief that there was a will, a reference to a master might have been awarded to inquire as to that fact. Even on such a reference, however, the purchasers would hold the affirmative ; and unless they produced some evidence of the existence of a will, the master would be compelled to report in favor of the. goodness of the title derived from the heirs at law.

The same difficulty exists in relation to the second objection to the title, that the creditors of the decedent may defeat it by an application to the surrogate to sell, for the purpose of paying the debts of the intestate, at any time within three years after his death. Such an objection might probably be valid if it appeared that the decedent left debts which his personal estate was insufficient to satisfy. But here the appellants do not swear that they even believe the intestate left any debts which could authorize an application to the surrogate for a sale of the real estate. And if the existence of debts had been alleged, it would have been sufficient, on the part of the respondents, to have shown that the personal estate of the decedent was ample, so that there was no probability that the real estate could ever be reached for the purpose of satisfying such debts.

The objection that the interest of the husband of one of the tenants in common, in his wife's share of the land, was sold by the sheriff on execution before the master had advertised for general liens, is not well taken. The sale by the sheriff turned what was before a general lien of the judgment creditor into a sprcific lien, in favor of the purchaser under the execution ; and if the sale had taken place before the commencement of the partition suit it probably would have been necessary to make the purchaser a party in order to divest the specific lien acquired by him under that sale. But as he was a purchaser pendente lite in this case, his title was divested by a sale under the decree, in the same manner as it would have been if he had obtained a specific lien upon the premises by taking a mortgage upon the husband's interest, subsequent to the commencement of the suit.

The purchaser at the sheriff's sale, therefore, was only substituted in the place of the judgment creditor who had a general lien upon the premises at the time of the commencement of the partition suit ; and to protect his substituted lien he should have come in before the master and claimed such substitution, to the amount of the purchase money bid by him and the interest thereon, when the master advertised for general liens. Whether it is not now too late for him to claim any share of the purchase money, is a question which it is unnecessary to decide here. But that his general lien upon this undivided share of the premises, as a purchaser pendente lite, is actually divested by the master's sale, so that these appellants will take their titles absolutely discharged of any claim or lien in his favor, I have no doubt.

The objection that the decree directs the premises to be sold upon a three weeks notice only, when the statute requires six, is not sustained by the fact as appears from the decree itself. It is true the decree directs the master to give three weeks previous notice, of the time and place of sale, in such newspapers printed in the city of New-York as he may deem proper ; but it also directs that he shall give notice " in such other manner as the law and rules and practice of this court may require." This last clause is of itself sufficient to make it the duty of the master to advertise the premises for sale for the time and in the manner required by the statue ; and the previous clause requiring the master to advertise for three weeks in such papers in the city as he may think proper, if it is not mere surplusage, must be construed as an authority to the master to advertise for a portion of the time required by the statute in more than one paper. The master has given the correct construction to the general direction, to give notice in such other manner as the law required, and has advertised the premises for the term of six weeks, as the partition law required. The decree and sale were therefore both regular, at least so far as is necessary to protect the title of the purchasers, without any amendment of the proceedings.

The objection that the complainant was a feme covert, and that her husband was not a party to the suit, would, if

true in point of fact, be a fatal objection to the title of the purchasers under the decree; and it could not be obviated by bringing that share of the purchase money into court to abide the result of a contest between the complainant and her supposed husband. Although the decree might be conclusive upon the defendants, so far as to divest all their interest in the premises, in favor of the purchasers at the master's sale, it is doubtful whether it would have the same effect upon the interest of a complainant who had brought a partition suit in her own name without the assent and protection of her husband. At all events it could not divest the life estate which the husband had in the share of the premises belonging to his wife. The purchasers would therefore be subject to be turned out of possession of an undivided share of the premises, at the suit of the husband; and this court will not compel a purchaser who has contracted for a good title to take it subject to a life estate in an undivided portion thereof. If there was any real doubt, therefore, as to the fact of the complainant's being a feme sole, the appellants ought not to have been compelled to take the title, without giving them an opportunity, either by an issue or by a reference to a master, to establish the fact by proof that the complainant was the lawful wife of Slocum. The fact that Slocum claimed to be her husband, however, without some evidence to induce the court to believe his claim was well founded, would not be a sufficient ground for excusing the purchasers from completing their purchases.

In this case, however, it is evident that the appellants have reason to suppose that the titles which they will acquire by the master's deeds will not be perfect, by reason of the alleged coverture of the complainant at the time of the commencement of this suit. That the ceremony of marriage between her and Slocum was performed, and that she lived with him several years as his wife, appears to be an admitted fact. It also appears, by the petition of Sebert, that Slocum has once sworn that he was never lawfully married to any other woman. Under such circumstances, though the affidavits on the part of those who were inter-

1839.

Spring
v.
Sandford.

ested in carrying the sale into effect rendered it doubtful whether this marriage was not void, yet as there was no direct and positive evidence that the alleged marriage in Massachusetts, with another woman, was duly and legally solemnized according to the laws of that state, I think the appellants should not have been compelled to complete their purchases until the fact of such previous marriage had been fully established, on a reference to a master, or otherwise; and by such testimony as would be sufficient, in any future litigation, to show the invalidity of the marriage between Slocum and the complainant.

The order appealed from must therefore be reversed, and there must be a reference to a master to examine and report whether the appellants will be able to obtain a good title to the premises purchased by them respectively under the master's deed in this cause. And upon the coming in of the master's report, and the confirmation thereof, if it appears that the appellants will obtain a good title, they are to complete their purchases and to pay to the complainant's solicitor the costs of the reference. But if it appears that a good title cannot be thus obtained, they are to be discharged and their deposites are to be returned to them. And they are also in that case to be paid their costs, including the costs of this appeal, out of the proceeds of the lands directed to be sold under the decree in this cause. The objection to the title, on the reference, is to be confined to the supposed defect arising from the alleged marriage of the complainant to Slocum. And the proceedings are to be remitted to the vice chancellor to carry this decision into effect; with power to him to make such order for the payment of the respondent's costs, upon this appeal and upon the proceedings before him, out of the proceeds of the master's sale, or otherwise, as will be just and equitable between the several parties to this suit who have a common interest in the completion of the sales.