## ROGERS and wife *vs.* McLEAN and others.

Where partition is sought by action, the court must in some regular way have acquired jurisdiction of the party to be affected by the judgment, as well as of the subject matter of the action; and if that jurisdiction of the person has not been acquired, the judgment is, to this extent, a nullity, and the title to be acquired under it defective.

In order to a voluntary appearance which will give the court jurisdiction of the person, there must be action by the party himself, or by some one authorized by law to speak and act for him.

Where, in a partition suit, one of the defendants was an idiot infant, and there was no attempt made to serve a summons on him, or upon any person

Rogers *v.* McLean.

representing him, and no notice was taken, in the complaint, of his disability, and a guardian *ad litem* for him was appointed upon the petition of a resident of Ohio, claiming to act under an appointment of " the court of probate" of Warren county, Ohio, as guardian for the idiot infant; the idiot not being personally within the jurisdiction of the court, and not being proceeded against by publication of a summons, which would have given the court a statutory jurisdiction; *Held* that the Ohio guardian could not by his act and petition give the court jurisdiction of the idiot's real property situated within this state; that such guardian had no rights or authority, within this state, in respect to the idiot's person or property; and that consequently a judgment in the suit, against the idiot, was a nullity, and his estate was not divested by a sale under such judgment.

A guardian of an idiot, appointed in another state, is but the guardian of the person and estate of the idiot within that state. His appointment has no extra territorial force, and gives him no power over the estate of the idiot within this state.

In this country the rights and powers of guardians are considered as strictly local, and not as entitling them to exercise any authority over the person or personal property of their wards in other states; upon the same general reasoning and policy which has circumscribed the rights and authority of executors and administrators. *Per* ALLEN, J.

Neither are the rights of foreign guardians over immovable property situated in this state, admitted here.

UPON a sale of certain premises in the city of New York, under a judgment in partition in this action, one Joseph Richardson became the purchaser at the price of $80,250, and paid the ten per cent of the purchase money, and signed the usual purchaser's agreement at the foot of the " terms of sale," agreeing to pay the residue of the purchase money and take the title at the time specified in the agreement. He now asks to be released and discharged from his contract, and that he be restored to all that he has lost by reason of his purchase, upon the ground that the title to the premises under the judgment and the sale therein, is not such as he is entitled to demand, or bound to accept.

*M. S. Bidwell,* for the petitioner.

*C. W. Sandford,* contra.

Rogers *v.* McLean.

ALLEN, J.  The court has jurisdiction, and will interfere in a summary manner, at the instance of third persons, to protect them against an abuse of power, sought to be exercised by an officer ·of the court, under pretense of an authority derived from it.  (*In re Merritt,* 5 *Paige,* 125.  *Merritt* v. *Lyon,* 16 *Wend.* 405.)  And a petition is the proper mode for seeking relief from a contract, entered into upon the faith of a judgment of the court, when the party will not acquire under the judgment a perfect title to that for which he contracts.  (*Darwin* v. *Hatfield, Seld. Notes,* 1852, *p.* 36.)  Indeed, no objection is taken to the form of the proceeding, or to the proposition that a purchaser at a judicial sale cannot be compelled to accept a defective or doubtful title.  It is claimed that the premises were sold at the risk of the purchaser.  It was important, with a view to obtain a fair price for the property, that bidders should understand that if they paid a fair price for the property, the same being sold without reserve, they would be protected by the court, and not compelled to take an incumbered or worthless title.  This is the well established rule in mortgage and partition sales in equity, and applies to like sales under the judgments of this court.  "If there is any cloud upon the title, or incumbrance upon the land, or difficulty in obtaining possession, the property should be sold at the risk of the purchaser in that respect, and in the amounts bid, there would then be a reasonable allowance for such risk."  (*McGown* v. *Wilkins,* 1 *Paige,* 120.)  A purchaser who is not notified of risk in the title, will not be compelled to take it, unless he can get a legal and equitable estate.  (*Coster* v. *Clarke,* 3 *Edw. Ch.* 428.)

The same principle is applied to sales by assignees in bankruptcy, who, if they give no notice of any defect in their title, or do not put bidders on their guard, by giving notice that they will sell only such title as they have, are bound to make a good title.  (*McDonald* v. *Hanson,* 12 *Ves.* 277. *Jervois* v. *Duke of Northumberland, Jac. & W.* 549.  2 *P. Wms.* 198.  3 *Mer.* 53.)  If there be any real doubt as to

the title which the purchaser will obtain under a sale in partition, *e. g.*, when the purchaser has reason to suppose that there is an outstanding life estate, by reason of the alleged coverture of the complainant at the time of the commencement of the suit, the purchaser will be discharged. (*Spring* v. *Sandford*, 7 *Paige*, 550.) So where an infant was made a defendant in a partition suit, but no guardian *ad litem* was appointed, or order for appearance entered, nor the bill taken as confessed against him, a purchaser under the decree was discharged from his bid, notwithstanding the infant, having obtained his majority, offered to release his interest; the decree being so far irregular that it could not be enrolled. (*Kohler* v. *Kohler*, 2 *Edw. Ch.* 69.) The enrollment was necessary to give a good title as to the other parties to the suit.

The reasons of the rule are obvious, and are such as require that it should be strictly adhered to. It is necessary, 1st, to secure to the parties in interest a fair price for property sold under the decree of the court; and 2d, to protect the purchaser, who pays a fair price for property so sold, without notice of any defect in the title.

If the purchaser was understood to buy at his own risk, it is quite evident that a greatly diminished price would be the result; and as the purchaser must take a title without covenants of warranty of any kind, he can only be protected from loss by reason of a defective title, by being excused from accepting any but a good title.

If, then, the conveyance to the petitioner as the purchaser, under the judgment in this action, would not give him a perfect title to the premises, he should be discharged from his bid; and if there is any estate or interest in the premises, which will not pass by the deed to be executed by the referee, then the title is defective.

Under the statute, partition may be had against unknown owners, the proceedings being to this extent treated as *in rem;* but when partition is sought by bill in equity, or by an action, which has taken the place of a bill in equity, no one

Rogers *v.* McLran.

is concluded or in any way affected by the proceedings and judgment, who is not made a party to the action, not nominally but really, by the service of process, or some of the ways known to the law, as by a voluntary appearance in the action. In other words, the court must in some regular way have acquired jurisdiction of the person of the party to be affected by the judgment, as well as the subject matter of the action; and if that jurisdiction of the person has not been acquired, the judgment is, to this extent, a nullity, and the title to be acquired under it defective. (*Coster* v. *Clarke; Darwin* v. *Hatfield; Spring* v. *Sandford, supra*.)

Serious questions are made in respect of the appearance of, and consequent jurisdiction over, several individuals, who are nominal parties to the record, and necessary parties to the action; but without passing upon all the objections taken, the objection that Samuel Mitchell, who is represented to be an "infant and idiot, of about twenty years of age," was not a party to the action, appears to be insuperable. It is conceded that Mitchell was one of the heirs at law of Samuel S. Eagle, and as such entitled to an undivided twentieth part of the premises Eagle died seised of, as is claimed by their seeking to uphold the proceedings and sale. Jurisdiction may be acquired by the service of the summons or the voluntary appearance of the defendant. (*Code*, § 139.) But an idiot has no will, and is not competent to appear in person or by attorney; and if the action be against a person judicially declared to be of unsound mind, or incapable of conducting his own affairs in consequence of habitual drunkenness, and for whom a committee has been appointed, the summons must be served by delivering a copy thereof to such committee, and to the defendant personally. (*Code*, § 134.) A service is not good which is not upon the defendant himself. (*Heller* v. *Heller*, 6 *How.* 194.) A guardian *ad litem* will not be appointed on the application of a relation of the lunatic, when the summons has not been served on the lunatic.

There was no attempt to serve a summons in this action

upon Mitchell, or upon any person representing him. It does not appear, but was assumed, that he was a non-resident of the state, and a resident of the state of Ohio. No notice is taken, in the complaint, of his disability. There was no evidence of his idiocy or infancy, except as contained in the petition for the appointment of a guardian *ad litem;* and if the court had jurisdiction over his person, perhaps that would be sufficient. It may be conceded, as it has been decided, that an infant over fourteen years of age may voluntarily appear, and that such appearance is effectual for all purposes as a like appearance by an adult; but it must be on his own application for the appointment of a guardian. (*Code,* § 116. *Varian* v. *Stevens,* 2 *Duer,* 635.) Whether the court could thus assume jurisdiction over a non-resident infant under fourteen years of age, upon the application of a relation or friend, and without notice to any person, may be more questionable, but need not be decided. (*Code,* § 116, *subd.* 2.)

It may also be assumed, for all the purposes of this motion, (without deciding,) that a committee of a lunatic infant, residing within this state and appointed by the courts of this state, may without the service of a summons upon the lunatic cause an appearance to be entered and a guardian appointed for him, which is at least doubtful. (*See Heller* v. *Heller, sup.*) The difficulties of this case would not be overcome if this was so decided. In order to a voluntary appearance, there must be action by the party himself or by some one authorized by law to speak and act for him; and the difficulty in this case is that the party did not and could not act for himself, and there was no one competent to act for him. The guardian for the " idiot infant" was appointed upon the petition of a resident of Ohio, claiming to act under an appointment of " the court of probate" of Warren county, Ohio, as " guardian for Samuel Mitchell, an idiotic person aged about 20 years, of Warren county, Ohio." What the powers and duties of a guardian thus appointed are in the state of Ohio is not known to me, but at the most he was but the guardian of the person and estate

of the idiot within the state of Ohio. His appointment had no extra territorial force, and gave him no power over the estates of the idiot within this state, and had the domicil of the idiot been changed from Ohio to this state, the guardianship of the person appointed in the state of Ohio would not have been recognized here. Courts in this state do not take notice of letters testamentary or letters of administration granted abroad or out of the state. And a person appointed guardian to an infant in another state is not entitled to receive from the administrator here, the legacy or portion of the infant. (*Morrell* v. *Dickey*, 1 *John. Ch.* 153.) One appointed executor in another state, and acting in this, will be regarded as an executor *de son tort.* (*Campbell* v. *Tousey*, 7 *Cowen*, 64.) No notice is taken of letters of administration granted abroad. *Robinson* v. *Crandall*, 9 *Wend.* 425; *and see Williams* v. *Storrs*, 6 *John. Ch.* 353.) Whether the guardianship in Ohio extended to the estate, or was confined to the person of the idiot, does not appear. Whatever difference of opinion there may be among foreign jurists as to the extra territorial authority of guardians respecting the persons or property of their wards, in America the rights and powers of guardians are considered as strictly local, and not as entitling them to exercise any authority over the person or personal property of their wards in other states, upon the same general reasoning and policy which has circumscribed the rights and authority of executors and admistrators. (*Story's Confl. of Laws*, 1st ed. § 499. *Kraft* v. *Vickery*, 4 *Gill & John.* 332.) In regard to immovable property, there is no diversity of opinion, and according to the rules of the common law, as well as by the general consent of foreign jurists, the rights of foreign guardians are not admitted over immovable property situated in other countries. Judge Story says, " No one has ever supposed that a guardian, appointed in any one state of the union, had any right to receive the profits, or to assume the possession of the real estate of his ward, in any other state, without having received a due appointment from the proper tribunals of the

state where it is situtate." (*Story's Confl. of Laws*, 1st ed. § 504.) There is no principle within which the Ohio guardian could, by his act and petition made and verified in or out of this state, give the court jurisdiction of his real property situated within this state. Mitchell, the ward, was not personally within the jurisdiction of the court; he did not and could not voluntarily submit himself to its jurisdiction; he was not proceeded against by publication of a summons, which would have given the court a statutory jurisdiction; the guardian had no rights or authority, within this state, in respect of his person or property, and it necessarily follows that the judgment, as to him, is a nullity; and his estate is not divested by the sale under the judgment.

The authorities referred to by the counsel for the parties to the action opposing the motion, relate to the procedure for the appointment of the guardian, assuming that the court has acquired jurisdiction over the person of the infant or other party incapable by himself of defending the action. (*Story's Eq. Pr.* § 70. 1 *Dan. Pr.* 202. 1 *Barb. Ch. Pr.* 86. *Mix* v. *Mix*, 4 *John. Ch.* 108. *Heller* v. *Heller, supra.*) They prescribe how a person under disability, *being made a party* to a suit, may defend and in what way, and upon whose application a guardian *ad litem* may be appointed, not how he may become a party without process.

If the guardian *ad litem* in a partition suit must be appointed in pursuance of the statutes regulating partition proceedings, rather than under the code, as has been held, the result will not be different; for there is no pretense that the directions of these statutes have been complied with. (2 *R. S.* 317, § 2. *Id.* 329, § 80 *as amended in* 1830. *Laws of* 1853, *p.* 311, § 1. *Varian* v. *Stevens*, 2 *Duer*, 635. *Lyle* v. *Smith*, 13 *How.* 104.)

The title, then, is not such a title as the purchaser can be required to accept, and he must be dicharged from his bid. This defect cannot be cured, except by a new action. The purchaser is entitled to a return of the ten per cent paid upon

the purchase, and to be paid out of the rents and profits of the estate now in the hands of the receiver, interest upon that sum from the time the sale was to be completed and the conveyance executed. He is also entitled to be paid out of the same fund the expenses incurred in investigating the title, and the costs of this motion. (*Kohler* v. *Kohler, supra.*) These costs and expenses are fixed at $150.

[AT CHAMBERS, New York, April 2, 1860. *Allen,* Justice.]