## THE AMERICAN SECURITY AND TRUST CO.

*v.*

## MUSE.

EQUITY, JURISDICTION OF, TO DECREE SALE OF REAL ESTATE ; PURCHASER OF REAL ESTATE.

1. The authority granted to equity jurisdiction in this District by Sections 969 to 973, R. S. D. C., to order the sale of real estate and decree to the purchaser a good title, when there is a life tenancy and a contingent limitation over to such issue of one or more of the tenants for life as shall be living at the death of their parent or parents, upon the application of the life tenant for a sale, does not extend to a case in which the limitation over is contingent upon the marriage of the life tenant and her having issue from such marriage, and the question of their survivorship of her does not arise. In such a case a court of equity has no power to order a sale and conversion of the realty into personalty, although manifestly for the advantage of all parties in interest.
2. A court of equity will not compel a purchaser of real estate to take a doubtful title.

No. 292. Submitted May 9, 1894. Decided June 15, 1894.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia, holding an equity term, requiring the appellant, upon his answer to a rule to show cause, to comply with the terms of a purchase of certain real estate, sold to him under an order of court in a suit depending in said court. Pending the appeal the appellant died and the executor of his estate, the American Security and Trust Co., became party appellant. *Reversed, and rule to show cause discharged.*

The COURT in its opinion stated the case as follows:

One Lindsay Muse, a colored citizen of the city of Washington, in the District of Columbia, died on June 14, 1888, seized and possessed of certain real and personal property therein. He left a will, duly admitted to probate, the sub-

stantial parts of which that bear upon the controversy in this case, are as follows:

" I, Lindsay Muse, of the city of Washington, in the District of Columbia, do make and declare this my last will and testament:

\*　　\*　　\*　　\*　　\*　　\*　　\*

3. "I give and bequeath to my daughter, Louisa Muse, the other silver cups, and six silver teaspoons, with my name on them, also all my household furniture, books, including my Harper's Family Bible, pictures, curiosities, and family stoves, to remain in and with my present residence as hereinafter desired.

\*　　\*　　\*　　\*　　\*　　\*　　\*

" I dispose of my real estate as follows:

(Here follow devises of different specific pieces of real estate to three married or widowed daughters, Fanny Weaver, Sarah Snowden, and Florida Pitts—the devise to each being " for and during her life, and after her death to her children in fee simple." Then follows the devise that has given rise to the present controversy, which is as follows:)

" I give, devise and bequeath lots number fourteen (14), fifteen (15) and sixteen (16) in square numbered one hundred and twenty-six (126) in said city of Washington, with the dwelling and other improvements thereon, being my present residence, to my daughter Louisa Muse, for and during her life, and if she marry and have issue therefrom, then after her death to such children in fee simple.

" It is my desire that this property, my present residence, and the furniture, books, pictures, etc., above bequeathed to her shall be kept intact as a home, as it now is, and I direct that my executors hereinafter named shall hold, set apart and keep two thousand dollars ($2,000) in United States four per cent. bonds now held by me, the interest of which shall be annually expended and applied in the payment of all general or special taxes or assessments on said

lots, numbered fourteen (14), fifteen (15) and sixteen (16) in square one hundred and twenty-six (126) and the insurance on and repair of the dwellings and other buildings thereon.

"In the event of the death of my said daughter Louisa, without leaving lawful issue or the happening of anything which, in the sound discretion of my executors, renders the application of said interest on said bonds as above, impracticable or improper, then the said bonds may be divided between my daughters, Fanny Weaver, Sarah Snowden, Florida Pitts, and Louisa Muse, or the survivor of them and the child or children of such of said four daughters as may have died, the child or children of such deceased daughters as may have died to take their parents' share.

"I give, devise and bequeath all the rest and residue of my estate, real and personal, after the payment of all my lawful debts, to my four daughters, Fanny Weaver, Sarah Snowden, Florida Pitts and Louisa Muse, or the survivor of them and the child or children of such as may die, such child or children to take their parents' share.

"I will, desire and devise that the lots so as above devised to my four daughters shall be held by the respective devisees as above, free from any control, as to the lots and premises and improvements so devised or any rents and profits therefrom, of or by their respective husbands, or any husband my daughter Louisa may happen to marry, desiring as I most earnestly do that the children of my said four daughters last above named may have the enjoyment, use and benefit in fee simple, of the property above devised to their mothers after their death.

"In case of the death of either of my said daughters, Fanny Weaver, Sarah Snowden, Florida Pitts and Louisa Muse, without leaving a child or children, or the child or children of such child or children surviving her or them, then I will and devise that the real estate of any one so dying shall be divided between the survivors of said four daughters last above named or the child or children of

such of said daughters, who may have died, the child, children, grandchild or children of such of said last-named daughters as may have died to take their parents' share."

\*        \*        \*        \*        \*        \*        \*

The four daughters of the testator who are mentioned in the will entered into possession of their respective devises. The property devised to the daughter Louisa Muse, which was the residence of the testator, comprises upwards of 12,500 square feet of land, situated in a rapidly improving portion of the city of Washington, and estimated to be worth about $27,000. But the houses thereon are stated to be of very little value, yielding rent only to the amount of $32 a month, or $384 a year, while the annual taxes on the property amount to upwards of $237, and a proper use of the lots, it is said, would require the destruction of the houses.

In this condition of things, Louisa Muse filed her bill of complaint in the present case, in which she stated that of the two houses on the property one was rented for $12 a month and the other, valued at about $20 a month, she used as a homestead with one of her nieces; that otherwise the property was wholly unproductive; that the income therefrom was insufficient to support her and pay the taxes; that she had no other property or estate; that the property was liable to be sold for taxes; and that it would be for her interest and the interest of those in remainder that the property should be sold, and the proceeds of sale invested for the uses and purposes of her father's will; and she prayed for such a sale.

The defendants made to the bill were her three sisters, Fanny Weaver, Sarah Snowden, and Florida Pitts, and the children of Fanny Weaver and Florida Pitts, of whom all but one or two were minors. Sarah Snowden, it is alleged, was without children, and without possibility now of issue; and the complainant stated that she herself was,

at the time of the filing of the bill (January 14, 1892), 44 years of age, unmarried and without issue, and with possibility of issue now extinct. The defendants answered the bill, all of whom were of age, consenting to the relief prayed for by the complainant, and admitting as true all the statements of the bill; and the minors made the usual formal answer by guardian *ad litem*. The complainant testified as a witness to the statements of her bill; and another and disinterested witness testified as to the condition of the property and the desirability of a sale.

The court granted the prayer of the bill, and decreed a sale, and appointed a trustee to make the sale. Having offered the property at public auction and received no bid that was satisfactory to the parties in interest, the trustee withdrew the property. Sometime afterwards he received a private offer for it from Benjamin H. Warder, which was in the following terms:

"Washington, D. C., July 29, 1893.

" David Warner, Esq., trustee.

"Sir: I hereby offer to purchase lots 15 and 16 and part of lot 14, square 126, in the city of Washington, D. C., as heretofore advertised by you as trustee in the equity cause of *Muse* v. *Pitts* and others, at the price of $1.90 per square foot, the terms of payment to be one-third in cash and the balance in equal payments at one and two years from this date, with interest payable semi-annually at the rate of five per cent. per annum. Upon your acceptance of this proposition and ratification by the court I shall be prepared to close the matter. It is understood that the title to be conveyed to me shall be a good one.

"Very respectfully,

(Signed)      " B. H. Warder."

This proposal was reported by the trustee to the court, with a recommendation for its acceptance; and the court directed the trustee to accept it. And there was an order

of ratification passed in the cause.   Warder, however, refused to complete the purchase; and a rule was issued against him to show cause why he should not be required to complete it.   He filed an answer to the effect that he refused to complete the purchase, for the reason that, as he was advised by counsel learned in the law, the court was without jurisdiction to make sale of the property in question, and that, therefore, no good title could be conveyed to him.   Upon hearing of the rule and the answer thereto, the court held that it had jurisdiction to make the sale, and that the trustee could convey good title; and it passed an order laying a peremptory rule upon Warder, requiring him to complete his purchase.

From this order he has prosecuted the present appeal.

*Mr. James Lowndes* and *Mr. Ward Thoron* for the appellant.

*Mr. A. A. Birney* for the appellee:

There is no defect of title, the proceedings are strictly according to the statute, and the purchaser should be required to take the land.   The proceedings are based upon Sections 969, 970, 971, R. S. D. C., taken from the act of Congress of August 18, 1856.   The only question made by the purchaser in his answer to the rule is whether the will of Lindsay Muse is within the terms of Section 969.

There are several paragraphs of the will to be considered: The first is the devise:   " To my daughter Louisa Muse for and during her life, and *if she marry and have issue* therefrom, then *after her death,* to such children in fee simple."   (Louisa Muse has not married.)   The will also provides:   " In case of the death of either of my said daughters, Fanny Weaver, Sarah Snowden, Florida Pitts and Louisa Muse, without leaving a child or children . . . *surviving her or them,* then I will and devise that the real estate of any one so dying shall be divided between the survivors of said four daughters last above named, or the child

4 Ct. App.—2

or children of such of said daughters who may have died, the child, children, grandchild or grandchildren of such of said last named daughters as may have died to take their parents' share."

These provisions are, of course, to be read together, the last being a limitation upon the first; together, they create what the statute demands: (1) A life estate in Louisa; (2) a contingent remainder to her issue "if she shall marry and have issue therefrom;" (3) such issue, in order that it may take the remainder, must *survive the mother*, otherwise the contingent remainder is to descend upon the sisters of Louisa and their children.

Upon this subject generally see 2 Washburn on Real Property, 608 *et seq.*

Local history has preserved the fact that the enactment of the statute of August 18, 1856, was procured in order that sales in fee simple might be made of the very valuable real estate devised by the will of John Gadsby for the benefit of his two daughters. By that will the estates in question were devised to trustees to hold for the benefit of his daughters severally, free from the control of their husbands, &c. Will Bk. 5, page 341. It further provided as follows: "In case either of my said daughters shall die leaving no issue living at the time of her death, then the interest or estate of her so dying without such issue is and shall become forthwith vested in the survivor . . . and in case both or either of my said daughters shall die leaving issue living at her or their death, then said trustees . . . shall hold the said property to the use of the said issue, one moiety thereof to the issue of each of my said daughters; or in case one only of them shall die leaving such child or issue, then after the death of the other daughter the whole of said property shall vest in the said issue, the issue in each and all of said cases to take in fee simple."

It will be seen that while the language of this will of John Gadsby differs from that of the Muse will, the legal

effect of each is similar. In each there is a limitation for life with a contingent limitation over in fee to such issue as shall be living at the death of the tenant for life, followed by contingent cross remainders.

In November, 1858, and after the passage of the statute a bill was filed seeking the sale of the property devised to the daughters named, trustees were appointed to sell, and sales were made and confirmed. See *McBlair* v. *Ten Eyck*, No. 1445 Ch. Rules, 5. The property thus sold included a large part of the square lying between Pennsylvania avenue and H street, and Lafayette Square and Seventeenth street, and the titles of the present holders depend absolutely upon the application of the statute in question to the will which has been quoted. In 1868 a second bill was filed (No. 1355, Eq. Doc. 19) under which there was sold, under orders of the court, a great quantity of other very valuable property. The construction thus placed on this statute will not be lightly regarded.

2. The only other question made by the appellant (who is not a party to the original action) in his return to the rule is whether the will prohibits a sale within the meaning of Section 969. The language is: "It is my *desire* that this property, my present residence . . . shall be kept intact as a home." That words of this kind are not prohibitive or mandatory, but are mere expressions of a wish has been too often held to require argument. Again, the court by making the decree for sale necessarily passed upon the proper construction to be placed on this clause, and its decision is not open to collateral attack. *Long* v. *Long*, 62 Md. 61; *Gray* v. *Brig Nardello*, 1 Wall. 634; *Noble* v. *Union River Logging Co.*, 147 U. S. 173.

Should the appellant claim that the evidence did not justify the conclusions reached by the court when it decreed the sale, or that there is irregularity of any kind in the proceedings, which on appeal by any *party* thereto would have resulted in a reversal of that decree, we answer that the

appellant has no concern in such matters, and the court will not consider them at his instance. *They do not affect the title of the purchaser to the premises sold*, and, it might be added, no objection of this kind was suggested by him in his answer to the rule to show cause why he should not be required to comply with his bid. " It is sufficient for the buyer to know that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale. With the errors of the court he has no concern." *Gray* v. *Brig Nardello*, 1 Wall. 634; *Grignon's Lesses* v. *Astor*, 2 How. 319; *Voorhees* v. *Bank*, 10 Pet. 449; *Mohr* v. *Manniere*, 101 U. S. 417; *Davis* v. *Gaines*, 104 Id. 386; *Long* v. *Long*, 62 Md. 33.

Mr. Justice MORRIS delivered the opinion of the Court:

The question presented by the appeal is, whether the court had jurisdiction to decree the sale which it did decree in the case. It is not claimed that the title is in any way imperfect, except in so far as the court may have been without jurisdiction.

Except for the enforcement of trusts, either express or implied, for the satisfaction of debts, and possibly under exceptional circumstances for the preservation of the property, a court of equity has no power to decree the sale of real estate, unless such power is conferred upon it by statute. There is no general power in equity to order the conversion of realty into personalty upon the ground merely that it would be for the advantage of all the parties in interest that there should be such conversion.

Such was the rule in the equity jurisprudence of England, as well as in that of Maryland, from which ours is derived. And the statutory grants of authority in that regard are few in number. There seems to be no more than four cases provided for: 1st. Where infants and persons of feeble and unsound mind are seized of real estate as tenants in common

or joint tenants with other persons (act of Maryland of 1785, Chap. 72, Sec. 12); 2d. When a guardian deems it to be for the interest of his ward that the real estate of the latter should be sold (act of Congress of March 3, 1843, Sec. 1, 5 Stat. 621, Rev. Stat. of U. S. for D. C., Secs. 957 to 968); 3d. For the purpose of conveying a good title, when there is a life tenancy and a contingent limitation over to such issue of one or more of the tenants for life as shall be living at the death of their parent or parents, and the life tenant applies for a sale (act of Congress of August 18, 1856, Chap. 153, 11 Stat. 118, Rev. Stat. of U. S. for D. C., Secs. 969 to 973); 4th. For the purpose of partition between joint tenants or tenants in common (act of Congress of August 15, 1876, 19 Stat. 202, Richardson's Supplement, Vol. 1, 121). The suit in the present case is brought under the third head, and the act of Congress of August 18, 1856; and it is not controverted that if it cannot be maintained under that act it cannot be maintained at all.

That act, as it appears in the Revised Statutes, is as follows:

"SEC. 969. Where real estate is limited by deed or will to one or more for life or lives, with a contingent limitation over to such issue of one or more of the tenants for life as shall be living at the death of their parent or parents, and the deed or will does not prohibit a sale, the Supreme Court of the District may, upon the application of the tenants for life, and if the court shall be of the opinion that it is expedient to do so, order a sale of such estate, and decree to the purchaser an absolute and complete title in fee simple.

" SEC. 970. Application for the sale of such real estate shall be by bill in equity, verified by the oath of the party or parties, in which all the facts shall be distinctly set forth, upon the existence of which it is claimed to be expedient that such sale shall be decreed, which facts shall be proven by competent testimony.

"SEC. 971. Such of the issue contemplated by the limitation as shall be in existence at the time of the application for the sale of the real estate shall be made parties defendant to the bill, and if minors, by guardian *ad litem*, together with all who would take the estate in case the limitation over should never vest; and such of the parties defendant as shall be of the age of fourteen years or more shall answer in proper person on oath.

"SEC. 972. And all evidence shall be taken upon notice to the parties and to the guardian *ad litem*.

"SEC. 973. The proceeds of sale of such real estate shall be held under the control and subject to the order of the court and shall be invested, under its order and supervision, upon real and personal security or in Government securities; and the same shall to all intents and purposes be deemed real estate and stand in the place of the real estate from the sale of which such proceeds have arisen, and as such real estate be subject to the limitations of the deed or will."

The peculiar phraseology of this enactment, it is well known, is due to the fact that it was intended to meet the exigencies of a special case, that of the will of John Gadsby, who had died a short time before the statute was passed, leaving in his will the precise limitation of his real estate which is here specified. Whether it would not have been wiser to enlarge the terms of the statute and to give authority to the courts of equity to deal similarly with all cases of contingent remainders, is a question for the legislature, not for the courts. We are confined to the terms of the statute, as they stand, and may neither restrict them by a narrow, or enlarge them by a liberal construction. We have only to determine in the present case whether the contingent limitation created by the will of Lindsay Muse falls within the purview of the statute. For it is plain that not all contingent limitations, but only a special class of contingent limitations, was intended to be governed by the statute.

Now it seems to us that there is a very great difference between the limitation here and that covered by the statute. The limitation provided for in the statute is to the issue of the life tenant living at his or her death; and it would seem that the contingency could not ultimately be determined and the estate absolutely become vested until the death of the life tenant. In the will now before us, the limitation is contingent upon the marriage of the testator's daughter and her having issue from such marriage; and the question of their survivorship of her does not arise. The contingency is determined by the marriage and the birth of issue; and upon such birth of issue the estate becomes vested. The vesting of the estate does not here depend upon survival, although, of course, as in all other similar cases, the right of possession and enjoyment does not accrue until the death of the life tenant.

There being, therefore, in our opinion, very great reason to construe the limitation in the present case as being different from the limitation mentioned in the statute, we think the occasion arises for the application of the rule of equity that a purchaser should not be required to take a title that may be the subject thereafter of litigation. Fry on Specific Performance states the rule as follows:

"The old practice of the court of chancery in all cases of dispute as to the title of the estate sold, was to decide either for or against the validity of the title, and either to compel the purchaser to take it as good, or to dismiss the bill on the score of its being bad. But the case of *Marlow* v. *Smith*, 2 P. Wms. 198, before Jekyll, M. R., followed by *Shapland* v. *Smith*, 1 Bro. C. C. 75, before Lord Thurlow, established the practice of allowing a class of titles, which, without affirming them to be bad, the court considered so doubtful as that it would not compel a purchaser to take them."

And this rule, notwithstanding the doubts of Lord Eldon on the subject, is now the recognized rule of equity, so

affirmed by the House of Lords. *Parker* v. *Tootal,* 11 H. L. C. 158, by Lord Westbury. The rule has been very generally adopted in the United States. Story's Eq. Jur., Sec. 749; *Butts* v. *Andrews,* 136 Mass. 221; *Spring* v. *Sandford,* 7 Paige, 550; *Bumberger* v. *Clippinger,* 5 W. & S. 311; *Gans* v. *Renshaw,* 2 Penn. St. 34; *Hepburn* v. *Auld,* 5 Cranch, 262; *Bank* v. *Hagner,* 1 Pet. 455.

It is with very great regret that we feel constrained to declare against the affirmance of a sale so beneficial in its terms to all the parties in interest as is the sale made in this case. But where such doubts are raised against the title as are raised here, and which, whether well or ill-founded, are not unreasonable and frivolous, and where there is no one before the court of the class of those who would be entitled to the remainder declared by the testator, it is not at all clear that those in remainder would be bound by any decree that would be made in the case, and it would not be equitable, in our opinion, to require the purchaser to consummate the sale.

*We must, therefore, reverse the decree of the court below, and remand the cause to that court with directions to discharge the rule against the purchaser. Under the circumstances, we deem it just that each party should pay his own costs on the appeal.*