ATLAS REFINING CO. v. SMITH. AMERICAN TUBE & IRON CO. v. SAME. URBAN v. SAME.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

JUDGMENT—LIEN—EXPIRATION—DECEASED DEBTOR—HEIR—EXECUTION.

Code Civ. Proc. § 1251, provides that judgments shall be liens on real estate for 10 years. Section 1252 authorizes enforcement of a judgment against a debtor's lands after 10 years, whether the property is in the hands of the debtor or his heirs or devisees, on filing a notice with the clerk, to be indexed as a notice of the pendency of an action to which the debtor or his heir or devisee is a party. Section 1379 declares that an execution cannot be issued against the property of a judgment debtor who has died since the entry of the judgment, except as prescribed in the next two sections, which provide that, after one year from the death of a judgment debtor, the judgment may be enforced by execution against any property "upon which it is a lien," on certain judicial orders being obtained. *Held*, that a judgment creditor is entitled to the issuance of an execution against the lands of a deceased debtor under sections 1379 and 1380, though 10 years have expired since the rendition of the judgment, so that its lien has ceased under section 1251, and his rights depend solely on section 1252, notwithstanding section 1380 limits the enforcement of a judgment against a deceased debtor to property on which it is still a lien.

Appeal from special term, Erie county.

Actions by the Atlas Refining Company, the American Tube & Iron Company, and George B. Urban, Jr., against Lester B. Smith. From an order denying leave to issue executions on the judgments against lands in the possession of Maude I. Smith as heir of the defendant, the Standard Oil Company of New York and Sadie Craik, assignees of the judgments, appeal. Reversed.

The Atlas Refining Company recovered a judgment against Lester B. Smith in the supreme court, Erie county, on the 29th day of April, 1884, for $1,573.70. The judgment roll was filed and the judgment duly docketed on that day. No execution has been issued on this judgment, but it was assigned to the petitioner the Standard Oil Company in June, 1892. George B. Urban, Jr., recovered a judgment against said Smith in the supreme court, Erie county, on the 19th day of September, 1882, for $373.77. The judgment roll was filed and judgment duly docketed in said clerk's office on that day. An execution was duly issued on this judgment to the sheriff of Erie county on the 22d day of April, 1882, which execution was returned wholly unsatisfied, and the judgment was duly assigned to Sadie Craik, the petitioner, on the 6th day of May, 1898. A transcript of each of said judgments was duly filed and docketed in the clerk's office of Suffolk county on the 1st day of July, 1899. The judgment debtor died intestate in the city of New York on the 23d day of November,

1893, being then the owner of certain real property, described in the petition,. situate in Suffolk county, and leaving, him surviving, as his only heirs at law,. a son and daughter, Earl B. and Maude I. Smith. On the 2d day of December,. 1893, Elmer S. Smith, the decedent's brother, was duly appointed his administrator by the surrogate of New York county, and he is still acting as such. The administrator filed an account on September 13, 1898, showing that no assets remained in his hands applicable to the payment of these judgments. The real property described in the petition is in possession of said heirs, who are still the owners thereof, subject to whatever claims the petitioners may have, and the petitions show that the heirs are permitting the property to go to waste. The petition shows that petitioners were also about to apply to the surrogate of the county of New York for leave to issue executions on said judgments. The application to the special term was made on an order to show cause, which was duly served on said heirs at law. Earl B. Smith made default, but Maude I. appeared, and opposed the application on the sole ground that, more than 10 years having elapsed since the recovery of the judgment, it has ceased to be a lien, and that, no transcript having been filed in Suffolk county within 10 years, it never became a lien on the premises, and. that there is no authority for enforcing it against the same. The motion was denied upon this ground.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Lyman A. Spalding, for appellants.

Ingram, Mitchell & Williams, for respondent.

LAUGHLIN, J. It appearing that the judgments have not been paid, and no cause being shown why the executions should not issue, other than a denial of power on the part of the court to grant the motion, this appeal presents a question of law only. By the Revised Statutes (2 Rev. St. p. 359, §§ 3, 4), a judgment remained a lien upon real property, as against the defendant, his heirs and devisees,. for the period of 20 years, after which time payment was presumed;. but a judgment ceased to be a lien after 10 years from the docketing, thereof as against subsequent incumbrancers by mortgage, judgment,. decree, or otherwise, and bona fide purchasers, even though the incumbrance was taken or acquired, or purchase made, with full knowledge of the existence of the prior judgment, but without fraudulent intent to prevent the payment thereof. Scott v. Howard, 3 Barb.. 319; Roe v. Swart, 5 Cow. 294; Ex parte Iron Co., 7 Cow. 540–554;. Tufts' Adm'r v. Tufts, 18 Wend. 621; Little v. Harvey, 9 Wend. 157;. Pettit v. Shepherd, 5 Paige, 493. Prior to the enactment of the Code,. if the judgment debtor died after judgment, and before execution issued, an execution could not be issued until the expiration of one· year after his death. 2 Rev. St. 368, § 27. In such case an execution could then only be had against the personal representatives,. heirs, or terre tenants after the return of a writ of scire facias. Wood. v. Morehouse, 45 N. Y. 368, 374, 375; Bank v. Van Brunt, 61 Barb. 361, 49 N. Y. 160–163. Section 376 of the Code of Procedure provided: that, where the judgment debtor died after the recovery of the judgment, his heirs, devisees, or legatees, or the tenants of real property owned by him "and affected by the judgment," might, after the expiration of three years from the time of granting letters testamentary or of administration, be summoned to show cause why the judgment should not be enforced against the estate of the judgment debtor in.

their hands, respectively, and that the personal representatives of a deceased judgment debtor might be so summoned at any time within one year after their appointment. Chapter 295 of the Laws of 1850 provided as follows:

"Notwithstanding the death of a party after judgment, execution thereon against any property, lands, tenements, real estate or chattels real upon which such judgment shall be a lien, either at law or in equity, may be issued and executed in the same manner and with the same effect as if he were still living, except that such execution cannot be issued within a year after the death of the defendant, nor in any case unless upon permission granted by the surrogate of the county who has jurisdiction to grant administration of letters testamentary on the estate of the deceased judgment debtor, which surrogate may, on sufficient cause shown, make an order granting permission to issue such execution as aforesaid."

Section 376 of the Code of Procedure, requiring leave of the court in which the judgment was docketed, on notice to the heirs, devisees or legatees, or personal representatives, to issue execution where the judgment debtor died after the recovery of judgment, and said act of 1850, requiring like consent of the surrogate's court, remained the law governing the issue of executions in such cases, as to all judgments rendered prior to the enactment of the Code of Civil Procedure, and it was immaterial to which court an application was first made. Bank v. Van Brunt, supra; Wallace v. Swinton, 64 N. Y. 188. Section 282 of the Code of Procedure provided for the docketing of judgments to conform to the new practice, but left the extent of the lien and the manner of enforcing the same to be determined by the Revised Statutes (Throop's note to section 1252, Code Civ. Proc.; In re Hallock, 29 N. Y. Supp. 555); but the legislature of 1851 amended this section by providing that a judgment, upon being duly docketed, "shall be a lien on the real property in the county where the same is docketed, of every person against whom any such judgment shall be rendered, and which he may have at the time of the docketing thereof in the county in which such real property is situated, or which he shall acquire at any time thereafter, for ten years from the time of docketing the same in the county where it was rendered." Such was the state of the statutory law on these questions when the first part of the Code of Civil Procedure was enacted. Section 1251 of the Code of Civil Procedure, as originally enacted, provided as follows:.

"Except as otherwise specially prescribed by law, a judgment, hereafter rendered, which is docketed in a county clerk's office. as prescribed in this article, binds, and is a charge upon, for ten years after filing the judgment roll, and no longer, the real property and chattels real, in that county, which the judgment debtor has, at the time of so docketing it, or which he acquires at any time afterwards, and within ten years."

Section 1252, as originally enacted, provided as follows:

"When ten years after filing the judgment roll have expired, real property or a chattel real, which the judgment debtor, or real property which a person, deriving his right or title thereto, as the heir or devisee of the judgment debtor, then has, in any county, may be levied upon, by virtue of an execution against property, issued to the sheriff of that county, upon a judgment hereafter rendered, by filing, with the clerk of that county, a notice, subscribed by the sheriff, describing the judgment, the execution, and the property levied upon; and,

if the interest levied upon is that of an heir or devisee, specifying that fact, and the name of the heir or devisee. The notice must be recorded and indexed by the clerk, as a notice of the pendency of an action. For that purpose, the judgment debtor, or his heir or devisee, named in the notice, is regarded as a party to an action. The judgment binds, and becomes a charge upon, the right and title thus levied upon, of the judgment debtor, or of his heir or devisee, as the case may be, only from the time of recording and indexing the notice, and until the execution is set aside, or returned."

Neither of these sections has been since amended.

Throop, in his note to section 1252, says that a doubt existed as to whether the provision of the Revised Statutes continuing the lien of a judgment for 20 years, as against the defendant, his heirs and devisees, was repealed by implication by said amendment of 1851 to section 282 of the Code of Procedure, and, if so, as to whether the lien of a judgment could be extended by redocketing it. He states that for these reasons it was deemed necessary to replace the former provisions by these two sections,—the first limiting the lien in all cases to 10 years after docketing the judgment, in accordance with the apparent meaning of said amendment to the Code; and the second supplying the casus omissus by providing a mode which enables a judgment creditor to proceed against real property after the lapse of the 10 years. In his note in the appendix to sections 1251 and 1252 of the Code he says that section 1252 was designed "to enable a creditor, after the lapse of ten years, to bind and reach the real property of the judgment debtor, or of an heir or devisee, by issuing an execution, and filing a notice similar to a notice of the pendency of an action."

At common law, a judgment was not a lien upon real property. Consequently a judgment creditor only acquired such lien as is given by the statute. The execution authorized by section 1252 during the life of the judgment, and after its lien period has expired, is a new special mode of levying an execution upon land, manifestly designed to revive and continue the right conferred by the Revised Statutes, but in a different manner. The lien created thereby commences from the time the notice therein provided for is indexed and recorded, and the execution must require a sale of the right and title of the judgment debtor, his heirs or devisees, as the case may be, existing at that time, and not at the time of the original docketing of the judgment. Garczynski v. Russell, 75 Hun, 497, 27 N. Y. Supp. 465; Evans v. Hill, 18 Hun, 464; Bank v. Quackenbush, 39 N. Y. Supp. 1126. It will be observed that the legislature, by the language employed in this section, has clearly shown its intention to confer upon the judgment creditor the right, after the expiration of the 10 years, to enforce the judgment against the real property and chattels real of a judgment debtor, and, in case of his death, against such property in the hands of his heirs and devisees, in any county to the sheriff of which the execution is issued, and it is not limited to property on which the judgment has been a lien.

Section 1379, as originally enacted, provided as follows:

"An execution to collect a sum of money cannot be issued, against the property of a judgment debtor, who has died since the entry of the judgment, except as prescribed in the next two sections."

The language of this section being sufficiently definite and comprehensive to embrace executions ·upon which judgments may be enforced pursuant to section 1252, it follows that it must have been intended to provide in sections 1380 and 1381 for the issue of the executions referred to in section 1252.

Section 1380, as originally enacted, provided as follows:

"After the expiration of one year from the death of a party, against whom a final judgment for a sum of money, or directing the payment of a sum of money, is rendered, the judgment may be enforced by execution, against any property upon which it is a lien, with like effect as if the judgment debtor was still living. But such an execution shall not be issued, unless an order, granting leave to issue it, is procured from the court, from which the execution is to be issued, and a decree, to the same effect, is procured from a surrogate's court of the state, which has duly granted letters testamentary or letters of administration, upon the estate of the deceased judgment debtor."

The reviser states that this section was prepared from said chapter 295 of the Laws of 1850, but it is evident that it is also a reenactment of part of section 376 of the Code of Procedure. This section has been since amended many times by adding provisions thereto, otherwise limiting the time of granting permission to issue executions, and continuing liens existing at the time of the death of the judgment debtor, and providing for cases where real estate has been conveyed to the judgment debtor in fraud of his creditors; but such amendments are not material to this case, for the reason that the greatest limitation upon the time of issuing an execution prescribed by any of such amendments expired before this application was made. It is contended by the respondent that this section only authorizes the issue of an execution in cases where the judgment is a lien. The effect of such a construction would be to nullify all the provisions of section 1252. Section 1380 must be interpreted, not literally, but liberally, with a view to making it harmonize with section 1252. It is manifest that the legislature intended to authorize the issue of an execution on a judgment after the lien thereof had expired, notwithstanding the death of the judgment debtor; but in order that such an execution might not be issued prematurely, or for an excessive amount, or where the judgment had been paid, or any other legal objection existed, it was provided that the consent of the court of law having charge of the judgment should be obtained; and, in order that the execution might not be unnecessarily issued, where the personal assets of the decedent might be sufficient to pay the judgment, or where the interests of the decedent's estate or of other creditors might require the suspension of the right to issue the execution for a period, or that the premises be sold otherwise, the consent of the surrogate's court was also required. Bank v. Van Brunt, supra; Wallace v. Swinton, 64 N. Y. 188. To carry into effect the clear intent of the legislature, which the court has implied authority to do (Beard v. Sinnott, 35 Super. Ct. Rep. 51), section 1380 must yield to the construction that the requirement, as a prerequisite to granting the order, that the judgment shall be an existing lien, only applies when 10 years have not elapsed since it was docketed, that being the only case where it could be a lien. A careful analysis of these statutory provisions shows that this construction will not do

violence to the language employed in section 1380, when properly understood. Section 1379 merely forbids the issue of the execution, except as prescribed in sections 1380 and 1381. Section 1380 prescribes that the consent of the court out of which the execution is to issue, and the consent of the surrogate's court also, must be obtained, and provides that such leave shall not be granted until after the lapse of a specified period of time. The method of enforcing a judgment by execution after 10 years, either against the real property of the judgment debtor, if living, or such property in the hands of his heirs or devisees, if he be dead, had been carefully prescribed in section 1252. All that was needed in such case was leave to issue the execution. But it was otherwise with a judgment which was still a lien. In that case it was necessary, not only to obtain leave to issue the execution, but also to prescribe how the judgment should be then enforced. This was done in the first sentence of section 1380, which provides that "a final judgment for a sum of money, or directing the payment of a sum of money [which embraces all such judgments, regardless of the lien thereof], may be enforced by execution against any property upon which it is a lien, with like effect as if the judgment debtor was still living." It is the second sentence of this section which provides for obtaining leave of the two courts to issue the execution. Its language, "but such an execution shall not be issued unless," etc., relates to an execution on "a final judgment for a sum of money, or directing the payment of a sum of money," referred to in the first sentence and in section 1379, and embraces executions issued on judgments which are not, as well as those which are, a lien. Inasmuch as section 1379 expressly relates forward to section 1380 for authority to issue executions in both cases, it would be proper to hold, in order to solve any doubt as to their meaning, that the words "such an execution" contained in the second sentence of the latter section relate back to section 1379, and include both classes of executions. In Lefevre v. Phillips, 81 Hun, 232, 30 N. Y. Supp. 709, it was only necessary to decide whether a judgment creditor's action could be maintained without the previous issue and return unsatisfied of an execution. Ten years had not elapsed since the recovery of the judgment in that case, and consequently the observations of the learned justice who prepared the opinion, to the effect that an execution cannot be issued under section 1380 of the Code of Civil Procedure where the judgment has never been a lien, should be restricted to the facts then under consideration, and were obiter dicta, at least if applied to the construction of that section in connection with section 1252. The case of Wilgus v. Bloodgood, 33 How. Prac. 289, holding that an execution might issue after 10 years, and In re Harmon, 79 Hun, 226, 29 N. Y. Supp. 555; Baumler v. Ackerman, 63 Hun, 40, 17 N. Y. Supp. 436, and In re Hallock's Estate, 29 N. Y. Supp. 555, holding the contrary, are not in point, as the judgments there under consideration were docketed prior to the enactment of the Code of Civil Procedure.

We are of opinion that the petitioner has shown a legal right to the issue of the execution, so far as the court in which the judgment is docketed is concerned. It follows that the order appealed from

should be reversed, with $10 costs and disbursements to the appellants, and the motions for leave to issue executions granted. All concur.