R. H. LEVINE, as Assignee of Atwater Live Poultry Co., Inc., Appellant, *v.* THOMAS BORNSTEIN, Respondent.

First Department, May 14, 1957.

*Fred Goldenberg* for appellant.

*Copal Mintz* for respondent.

Breitel, J. The question in this case is whether, without leave of the court, a judgment creditor may issue an execution under the provisions of section 512 of the Civil Practice Act on a judgment upon which no prior execution had been issued and where 10 years have lapsed since its docketing. The issue arises on two motions involving two judgments, but otherwise turning on identical facts. Special Term, in a thoughtful and analytical opinion, granted the motions vacating the executions and the notices of levy.

While the question perhaps is a close one, the orders should be reversed and the motions denied, both in reason and because

precedents directly applicable should not be disregarded in the absence of cogent necessity based in justice.

On December 3, 1936, two judgments were rendered in favor of the judgment creditor in the respective sums of $2,360 and $2,143.13, in the City Court of the City of New York. Nothing was done with respect to these judgments until December 3, 1956, when the judgments were docketed in the County Clerk's office of New York County. On that date other proceedings were taken by the assignee of the judgment creditor, including the filing, recording, and indexing of notices of levy and the issuance of executions, pursuant to section 512 of the Civil Practice Act. On that date, but for such proceedings, the judgments would have lapsed because of the Statute of Limitations applicable to judgments (Civ. Prac. Act, § 44).

No issue is raised as to the validity of the judgments in the present proceedings, nor is the issue raised that the judgments have ever been paid. It is contended, however, by the judgment debtor that the executions do not fully comply with sections 640-a, 643, 651 and 652 of the Civil Practice Act. These sections determine when executions may issue as of course and when leave of the court must be first obtained.

The judgment creditor admits that the executions and the notices of levy do not comply with the sections cited by the judgment debtor, but he argues that an execution issued under section 512 need not comply with these provisions. In so arguing, the judgment creditor rests on *Rondout Nat. Bank* v. *Shappee* (192 Misc. 727) in which case Mr. Justice BOOKSTEIN, sitting in Rensselaer County, wrote an extended opinion holding that a section 512 execution need not comply with the other provisions of the Civil Practice Act pertaining to executions. The case is precisely in point, because there, too, the execution was issued more than 10 years after the rendering of judgment, without the issuance and return unsatisfied of a prior execution within five years after the filing of judgment roll, and without leave of the court having been first obtained. The *Rondout* case was thereafter followed by the Appellate Division for the Second Department in two recent cases (*Mineola Plumbing Supply Co.* v. *Taylor,* 280 App. Div. 873; *Wyser* v. *Estrin,* 285 App. Div. 827).

Except for the cases relied upon by the judgment creditor, there appears to have been no prior holdings on the question involved here. There have been, however, related dicta and nonessential portions of *ratio decidendi* in a number of old cases, but they may be chosen variously to support either posi-

tion. (Cf., e.g., *Guiterman* v. *Coutant,* 59 Misc. 23, affd. 128 App. Div. 452, with *Garczynski* v. *Russell,* 75 Hun 497.) This case is, therefore, substantially one of first impression in this department.

Examining the statutes in their present form, one finds that section 512 is contained in article 35 of the Civil Practice Act relating to judgments and their liens rather than to the issuance of executions. It provides, generally, that when 10 years have expired since the filing of the judgment roll, the judgment creditor, in certain cases, may issue an execution to the sheriff and file a notice with the county clerk describing particularly specific real property to be levied upon. Such a judgment, thereupon, and from the time of the recording and indexing of such notice, becomes a charge upon the interest of the judgment debtor or his heir or devisee. It will be observed that a section 512 execution is limited to specifically described property, and that it becomes a charge against the judgment debtor or, if he be dead, his heir or devisee.

In a different article (art. 42) of the Civil Practice Act are contained the provisions with respect to the issuance of executions generally. Such executions may be issued only within periods limited since the filing of the judgment, unless a prior execution has been issued and returned unsatisfied, or unless leave of the court is first obtained (Civ. Prac. Act, §§ 640-a, 650, 651, 652). There are also other provisions which relate to the issuance of general executions against the property of a deceased judgment debtor. Such executions may be issued only after a year has expired since the death of the judgment debtor, and only upon the obtaining of leave from the court in which the judgment had been rendered, and from the Surrogate's Court.

The provisions last-discussed are different from those contained in section 512 in that the executions run generally against the property of the judgment debtor and, in that connection, require that recourse first be had to the personal property of judgment debtor, before real property may be used to satisfy the judgment. These, indeed, are the types of execution with which most have been familiar since very early days.

In both the *Rondout* case (*supra*) and at Special Term in this case, as well as in some of the earlier cases, there had been extended comment whether section 512 is to be read together with the other sections of the Civil Practice Act relating to executions, or whether section 512 sets up a separate, special means of enforcement that is not controlled by provisions applicable to executions in general. A casual examination of the origin of these sections reveals that neither generalization is quite

true. To some extent, section 512 is to be read together with the other sections, and to some extent it evidently provides a special means of enforcement independent of those sections.

Fortunately, the history of the sections involved is provided by Mr. Throop in the Reviser's Notes to section 1252 of the Code of Civil Procedure. (Code of Remedial Justice [1876], note appended as a supplement to § 1252; Code Civ. Pro. [1877], n. appended to § 1252.) Section 1252 of the Code of Civil Procedure is the predecessor section to section 512 of the Civil Practice Act. It, in turn, was preceded in part by section 282 of the Code of Procedure, and by portions of the Revised Statutes, more specifically referred to by Mr. Throop in his note. In these old statutes, the lien of a judgment was limited to 10 years, but only with respect to purchasers and encumbrancers. A judgment, nevertheless, continued as a valid lien subject only to the Statute of Limitations on the judgment, as against the judgment debtor and those who took upon his death. Originally section 282 of the Code of Procedure contained no time limitation with respect to the lien, but such limitations were left to the separate provisions of the Revised Statutes. In 1851, however, section 282 was amended to incorporate the 10-year limitation that had previously been found in the Revised Statutes. (L. 1851, ch. 479, at p. 896.) This, as Mr. Throop points out, created a doubt whether a judgment creditor had any means of enforcing his judgment after 10 years against specific real property. To clarify this situation, there were included the provisions found in section 1252 of the Code of Civil Procedure. These provisions remain substantially unchanged in section 512 of the Civil Practice Act.

Thus, it will be observed in the light of the history discussed, section 1252 of the code, and now section 512 of the Civil Practice Act, cover the situation where a judgment creditor wishes to enforce his valid, but lien-expired judgment against specific property of the judgment debtor, or those who take on the judgment debtor's death. Hence, it appears that this remedy was neither conceived, nor is it now regarded, as one in the nature of a general execution. Moreover, it does not continue a lien valid against all the world, as was the judgment lien for 10 years. On the contrary, it establishes a new lien against specific property, limited to the judgment debtor and those who take upon his death and, by the explicit language in the statute, dating only from the filing of the notice. (See *Importers & Traders' Nat. Bank of N. Y.* v. *Quackenbush,* 144 N. Y. 651; *Atlas Refining Co.* v. *Smith,* 52 App. Div. 109.) As to the lien effect of a later judgment upon one more than 10 years old,

before the adoption of section 1252, see *Scott* v. *Howard* (3 Barb. 319).

Of course, this history is not conclusive on whether or not a specific execution under section 512 must meet the requirements provided for general executions issued under the later sections of the Civil Practice Act. But it is suggestive of the fact that section 512 was designed to meet a very specific problem which arose with respect to expiring liens of judgments. It is persuasive, then, that certainly some of the requirements for general executions should not apply to section 512 executions; and courts have so held. (*Garczynski* v. *Russell*, 75 Hun 497, 502, *supra*; *Atlas Refining Co.* v. *Smith*, 52 App. Div. 109, 116-117, *supra*; *Guiterman* v. *Coutant*, 59 Misc. 23, 25, affd. 128 App. Div. 452, *supra*.)\*

The judgment debtor argues that if a section 512 execution need not comply with the requirements applicable to executions generally, then an anomaly exists. It is pointed out that with respect to the issuance of general executions, if, with respect to the judgment, none had been issued and returned unsatisfied within 5 years, leave of the court must be obtained. Yet, with respect to a section 512 execution issued more than 10 years after judgment had been filed, there is no similar requirement.

The asserted anomaly, if it be one, is quite superficial. The difference is that with respect to general executions, the execution is an open warrant to the sheriff to levy on whatever property of the debtor he can find. The occasion for safeguard with respect to such a document is obvious, at least after the lapse of time in which a judgment creditor has lain dormant. On the other hand, the main thrust of section 512 is to continue or revive the potential of a judgment for direct enforcement, and then only to enforce a limited lien on specific property. During the first 10 years the judgment was a lien on real property found within the county, without any further action on the part of the judgment creditor. After 10 years, by the use of section 512, the judgment creditor may enforce the judgment by a new lien, but is limited to specifically described property, and only

---

\* In the last two cases cited the rationale appears for provisions requiring leave before execution may be issued against the property of a deceased judgment debtor. That rationale is interesting and relevant to uncovering a pattern. In such case a general lien is involved. Leave is required from the court in which judgment was rendered in order to provide at least a year in which administration of the estate can be instituted and then to make certain that the judgment is still outstanding and unsatisfied. Leave is then required from the probate court in order to make certain that recourse is first had to the personal property before real property may be attached, and, in general, to avoid disruption of the estate administration.

against the judgment debtor and those who take on his death. This is the limited purpose and limited effect of section 512. (*Holland* v. *Grote,* 193 N. Y. 262, 268; *Ungerleider* v. *Butler,* 5 Misc 2d 425, affd. 280 App. Div. 999.)

As a matter of fact, the old Code of Procedure contained the same time limitations with regard to general executions (§§ 283, 284). But section 282, also found in a separate title from that controlling executions and in one relating to the lien of judgments, contained no time limitation, until the amendment of 1851. Of course, in that section, at that time, there was no reference to the issuance of executions. As pointed out by Mr. Throop, the limitations were to be found only in the Revised Statutes. In other words, the time limitations were not regarded as those of executions, but of liens.

In these circumstances, none can argue with dogmatism that a section 512 execution requires, or, for that matter, should require, compliance with all of the provisions applicable to general executions. And, since what is involved is the enforcement of a valid judgment for the payment of money, it would seem that in the absence of policy dictating otherwise, enforcement should be facilitated, rather than frustrated by technical objections. There is no peril involved in the issuance of a section 512 execution without leave of the court having first been obtained. The sheriff is in no position to spirit away real property before the judgment debtor can take action appropriate to attacking the execution on the ground that the judgment is outlawed, or that it has been paid, or for any other reason that would remove the foundation for the execution (see, e.g., *Maryland Cas. Co.* v. *Stern,* 5 Misc 2d 423). Indeed, if the question were completely novel, the stronger argument can be made for interpreting the statute in a liberal manner to accomplish the satisfaction of a judgment which to date has remained unpaid.

But the question raised in this case is not novel. The *Rondout* case (192 Misc. 727, *supra*) was decided in 1948. Thereafter the Appellate Division for a sister department, in two cases, followed the reasoning and the holding in the *Rondout* case (*Mineola Plumbing Supply Co.* v. *Taylor,* 280 App. Div. 873, *supra*; *Wyser* v. *Estrin,* 285 App. Div. 827, *supra*). While these authorities, arising in other departments than our own, are not binding upon us (as pointed out by Special Term), in the absence of reasons that sensibly affect the administration of justice in its ultimate objectives, we should not strike off on a different road because of some small preference for our own reasoning. Moreover, the Legislature has had ample opportunity to correct the holding in those cases, if they were deemed

unjust. And it has not done so. In the meantime, without injustice, precedents have set.*

For all of these reasons, namely, the history of these rather technical statutes dealing with the mechanical implementation of executions, and because the satisfaction of judgments is to be encouraged, the orders vacating the executions and the notices of levy should be reversed. There are some other matters raised with respect to the validity of the executions by the judgment debtor, but they are not considered of sufficient moment to merit discussion.

Accordingly, the orders vacating the executions and the notices of levy should be reversed and the motions denied, with $20 costs and disbursements to appellants.

PECK, P. J., FRANK, VALENTE and McNALLY, JJ., concur.

Order vacating execution and levy under judgment for $2,360, and order vacating execution and levy under judgment for $2,143.13, unanimously reversed, the motions denied, with $20 costs and disbursements to the appellants.

---

* Indeed, while the language is far from unequivocal, a recent text would seem to be in accord with the analysis suggested here, and the holding in the *Rondout* case. (*Rondout Nat. Bank* v. *Shappee*, 192 Misc. 727, *supra*. See 7 Carmody-Wait on New York Practice, pp. 362–364, 538–542.)