TREACY v. ELLIS et al.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

1. PARTITION—JUDGMENT LIENS—ADJUDICATION.

Under Code Civ. Proc. §§ 1561–1565, relating to partition of real property, and providing for ascertaining the amount and validity of unsatisfied liens, and that, if any are found, the court shall order the portion of the money paid into court on account of the share of the person against whom such liens exist to be distributed among the creditors having liens, the right of a judgment creditor, whose lien had not expired when the partition and sale of the property was had, to the money ordered paid into court for distribution among the lienholders, of which he was one, did not cease when the lien on the property would have ceased, but remained good, since the decree of the court ordering the money paid into court for such distribution is an adjudication of the liens of, and confers a right in the lienholders to, the money thus substituted for the realty, making it personalty, to which the statute relating to the lien of judgments upon real estate does not apply.

2. SAME—VALIDITY OF JUDGMENTS—WAIVER OF OBJECTIONS.

A party to a partition proceeding, in which it was decreed that certain judgments against him were valid liens upon his interest in the property, cannot afterwards, where he fails to make such defense in such proceeding, claim that such liens are invalid because in the actions in which judgments were obtained he was not served with summons.

3. CORPORATIONS — DISSOLUTION—ORDER OF ASSIGNMENT OF PROPERTY—COLLATERAL ATTACK.

An order authorizing the assignment by the receiver of a bank of certain judgments held by it, duly made in the dissolution proceedings of the bank, are prima facie binding upon all its stockholders, and the title of the assignee can only be assailed by a direct proceeding to which he is made a party.

Appeal from special term, New York county.

Action by Patrick Treacy against Anthony Ellis and others. From certain portions of an order distributing funds deposited in court, James P. Brown, Julia A. Shaw, and Raphael J. Moses appeal. Affirmed.

For former opinion, see 57 N. Y. Supp. 418.

This action is for the partition of real property, and was begun in 1886. The appellant Brown was a party defendant. In 1878 the Grand Central Bank of the City of New York recovered four judgments against Brown and one Foran. In this and the following year three other judgments were recovered against Brown and Foran by Reuben Ross, Stephen L. Merchant, and Abraham Steers. The latter judgment is now owned by the respondent Carpenter. By the judgment of partition and sale, entered in April, 1886, it was determined that Brown owned an undivided sixty-fourth interest in the property, which was subject to the lien of the judgments referred to, and said partition judgment provided that the referee pay into court the money arising from the sale of Brown's interest. In accordance with this direction, the money was paid to the chamberlain, subject to the further order of the court. In March, 1894, the Grand Central Bank, having long ceased to transact business, petitioned for a dissolution. Notice of the application was duly given to the stockholders, and, no one opposing, an order was made dissolving the corporation and appointing a receiver. This order was entered November 28, 1894. On May 1, 1895, an order was made discharging the receiver. It contained the provision "that the said receiver may, upon request, execute and deliver satisfaction pieces or assignments of several unsatisfied judgments heretofore recovered by said bank, it appearing by the affidavit of William Burns that the same are of no value as an asset." On May 13, 1898, the receiver assigned to the respondent Schaffner the four judgments recovered by the bank against

Brown and Foran. In June, 1898, a motion was made in behalf of Schaffner, Merchant, and Carpenter for payment of the fund representing Brown's interest in the property partitioned, upon which an order was made appointing a referee to hear and report the facts. Upon the coming in of his report the motion was denied, without prejudice to a renewal upon notice to those beneficially interested in the assets of the Grand Central Bank. Before the date fixed for the making of the second motion, the appellant Moses appeared, and petitioned to be made a party to the proceeding, and for other relief; and on December 23, 1898, an order was made giving him leave to appear before the referee originally appointed, and submit proof of his interest in the bank. He appeared accordingly, and submitted certain proof, which the referee reported to the court in June, 1899. Prior to this, on March 14, 1899, Moses petitioned, in the dissolution proceedings, that the order dissolving the bank and appointing a receiver be vacated, and that the assignment by the receiver to Schaffner of the judgments against Brown be adjudged void. On April 25, 1899, an order was made denying the prayer of the petition; the ground taken by the court being that the petitioner was estopped from attacking the dissolution by making himself a party to the proceeding now under review. This order was affirmed by the appellate division upon the same ground in June, 1899. A second motion by the respondents for payment of the fund was suspended until the hearing of the application made by Moses. In July, 1899, a third motion was made, upon all the prior proceedings, which resulted in the order appealed from, distributing the fund, after payment of a referee's fee of $100, among Schaffner, Merchant, Carpenter, and the estate of Ross, in proportion to the amount of their several judgments.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Benj. T. Kissam, for appellants Brown and Shaw.

Henry Hoylman, for appellant Moses.

O. F. G. Megie, for respondents Schaffner and Merchant.

Wm. J. Leitch, for respondents executors of Reuben Ross, deceased.

BARRETT, J. There are two branches of the appeal:

1. Brown, and Mrs. Shaw, his assignee, contend that the lien of the judgments against the former has ceased from lapse of time, and hence that the respondents are not entitled to the fund deposited with the chamberlain. Concededly, however, when the partition suit was begun, in 1886, and when, in the same year, the decree was entered, the sale was had, and the referee, in pursuance of the terms of that decree, paid over to the chamberlain the sum received for Brown's interest, all of those judgments were liens thereupon. This established the right of the judgment creditors. Caswell v. Kemp, 41 Hun, 434. In the case cited the judgment was still a lien upon the property when the partition suit was begun, but had ceased to be such before the trial. It was held, however, that the rights of the respective parties were to be determined as of the date when the action was commenced, and consequently that the creditor had a valid claim against the interest of his debtor by virtue of the judgment. The present case is still stronger for the judgment creditors, since their judgments remained liens upon the real property up to the time of the sale. This being so, it is immaterial whether the date when the action was begun be taken as the time when rights become fixed or the date of sale, according to the rule established in foreclosure cases. Nutt v. Cuming, 155 N. Y. 309, 49 N. E. 880;

Elsworth v. Woolsey, 19 App. Div. 385, 46 N. Y. Supp. 486, affirmed on opinion below, 154 N. Y. 748, 49 N. E. 1096. In either case, the judgments here were still liens, and the creditors consequently entitled.

It seems clear, upon principle as well as authority, that the subsequent lapse of time did not defeat their rights. The contention is that the proceeds of Brown's individual share, when brought into court, were a substitute for his interest in the land, and that, as the lien of a judgment upon real property ("except as otherwise specially provided by law") ceases after 10 years (Code Civ. Proc. § 1251), so necessarily does the lien upon the substitute. This contention overlooks two salient considerations: First, that the substitute is not real estate, though the law may sometimes give it that attribute in determining who is entitled to it; and, second, that the decree confers a right to the moneys in court, and not a mere general lien thereon. The money substitute is, in fact, personal property, and the statute relating to the lien of judgments upon real estate has no application. It certainly has no direct application, for it is silent with regard to any substitute for real property. And it cannot be made applicable here by implication, or even by analogy, for the reason that an execution cannot be levied against moneys in custodia legis. Section 1252 provides that, even after the expiration of the 10 years, real estate may be levied upon under an execution, by filing with the clerk of the county a notice, subscribed by the sheriff, describing the judgment, the execution, and the property levied upon. That notice must be recorded and indexed by the clerk, and the judgment binds and becomes a charge upon the right and title thus levied upon of the judgment debtor from the time of so recording and indexing. Nothing of this kind could be done in the case of the money substitute in the hands of the court, and it would be a strange analogy which would give the judgment creditor less rights with regard to the substitute than he would have had with regard to the realty itself. In the one case, he would have the 10 years, and a further lien upon the recording and indexing of the notice; in the other, he would have the 10 years, with no possibility of extension. He might, it is true, issue an execution against property after the expiration of the 10 years; but the moneys in court could not be levied upon, nor could the notice be filed, recorded, and indexed.

The reason why the statute makes no provision, in this particular connection, with regard to a money substitute for real estate in partition, is obviously because what were deemed proper provisions were made in that part of the Code which relates to partition actions (sections 1561-1565). Under these provisions, a mere general lien upon the moneys paid into court is not substituted for the general lien of the judgment upon the real estate. The creditor's lien is the subject of adjudication in the partition action, and that adjudication settles his right of lien and his sequential right to the fund, subject to the incidental questions of extent and priority. He loses his lien if the adjudication goes against him. It was held in Dunham v. Minard, 4 Paige, 442, that, if the master in the partition ac-

tion reports against the claim of any person having a lien by judgment or decree upon the shares of any of the parties, the claimant must except to the report in due season, to preserve his lien upon the purchase money. The present statute does not materially differ in this respect from that which the chancellor was then considering. This case was cited in Halsted v. Halsted, 55 N. Y. 445, where it was distinctly held that the referee in partition is authorized to take proof and pass upon the question of the validity of an incumbrance upon an undivided share of one of the parties. Andrews, J., there said:

"The inquiry as to the existence and amount of the lien involved the further question as to its validity, if the party against whose share it was claimed to exist contested it. In case the master reported against the lien claimed, exception could be taken to the report when it was presented for confirmation."

The learned judge added that:

"The question of the distribution of the proceeds of the sale of any undivided share of the premises, as between the owner and incumbrances, is collateral to the main purpose of the action. The court, having possession of the fund for distribution, directs proof to be taken upon the reference as to the liens, upon notice to the parties interested, and, upon the coming in of the report, adjudges how the distribution shall be made."

As Brown was a party to the partition action, it is clear that the decree was an adjudication binding upon him that the judgment creditors had valid liens upon his share by virtue of their judgments. The statutory lien thus ripened into an adjudicated right,—that is, an adjudicated right to the money substitute for the realty,—and consequently the creditors' application for payment was not to enforce a general unadjudicated lien, but simply to enforce the judgment in their favor.

This conclusion is in entire accord with the provisions of sections 1563–1565. Under the former section, where it appears from the referee's report that there is an existing lien upon the share of a party, the interlocutory judgment must direct payment into court of the portion of the money arising from the sale of the share. Under section 1564, provision is made for ascertaining the whole amount of the unsatisfied liens. Section 1565 then provides that, when the whole amount of the unsatisfied liens has been ascertained, the court must "order the portion of the money so paid into court to be distributed among the creditors having the liens, according to the priority of each of them." Those sections clearly indicate that the procedure provided for, as far as the existing lien adjudicated by the decree is concerned, is not an original application to declare and enforce such lien, but an application at the foot of the decree to enforce the judgment creditors' adjudicated right with respect thereto. It is quite clear, therefore, that these judgment creditors have had a right throughout to the satisfaction of their adjudicated liens. The money in court was as much theirs, under the partition decree, as though it had been deposited in express terms "to their use." The referee has found that Brown was not served with the summons in the actions brought by Ross and Merchant, but this cannot aid him. He was, as we have seen, a party to the partition action.

and the decree therein that these judgments were liens is binding upon him and his assignee.

2. We think that the appeal of Moses must also fail. The order authorizing the assignment, by the receiver of the Grand Central Bank, of the judgments recovered by it, was duly made in the dissolution proceedings, and was prima facie binding upon Moses and all the other stockholders of the bank. Schaffner's title was therefore presumptively good, and it could only be assailed by a direct proceeding to which he was a party. Moses applied in the dissolution proceeding to set aside the order which authorized the assignment, and also to set aside the assignment itself. His application, however, was denied. He coupled it with an application to set aside the dissolution proceeding, and his entire application was denied. The opinion of the court (here and below) was confined to the questions raised with regard to the dissolution proceeding proper, but the order denied every part of the application, including, of course, that which questioned the receiver's order and the assignment to Schaffner. We would be glad to find some way of relieving the stockholders of the bank; for, although the referee found that the judgments were assigned to Schaffner for value, we have very grave doubts of the correctness of that finding. It is fair to Schaffner, however, to say that he has never been called upon to answer in any direct proceeding to set aside his assignment and the receiver's order under which it was made. The affidavits of Moses and of the receiver, read in opposition to the final application here for payment, contained statements which questioned the propriety of the receiver's order and the consideration for the assignment. But, of course, such affidavits could not then be considered or treated as in the nature of an independent application to set aside the receiver's order and the assignment thereunder to Schaffner. The fact is that the independent application was made, as already indicated, and denied, and we see no way now of reopening the matter.

Upon the record before us, it is clear that the order, so far as it is appealed from by Moses, Brown, and Shaw, was correct, and it should be affirmed, with $10 costs and disbursements of the appeal. All concur.