(86 Misc. Rep. 662)

## HULBERT v. HULBERT et al.

(Supreme Court, Special Term, Seneca County.   August, 1914.)

**1. PARTITION (§ 111*)—PROCEDURE—DETERMINATION OF PRIORITY OF LIENS.**

Under Code Civ. Proc. §§ 1561–1566, relating to partition, the final determination as to priority of liens, the existence of which has been ascertained and reported to the court, is to be made on application for distribution of the proceeds of the sale, and not in the final judgment in the partition action.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 401–418; Dec. Dig. § 111.*]

**2. SUBROGATION (§ 16*)—EXECUTION SALE—RIGHTS OF PURCHASER.**

The purchaser at execution sale of an undivided interest in lands inherited by the judgment defendant, no sheriff's deed having been made, became a substituted lienor in place of the judgment creditor, and was entitled to whatever rights such creditor had in the land under the judgment.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 37, 41–43, 79; Dec. Dig. § 16.*]

**3. PARTITION (§ 111*)—SALE—PURCHASER AT PRIOR EXECUTION SALE—RIGHTS.**

Where the holder of a sheriff's certificate of sale on execution of an undivided interest in land voluntarily appeared in a partition suit and made proof of his claim, the partition sale converted his right in the property to a right to share in the proceeds of the sale to the extent of his bid.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 401–418; Dec. Dig. § 111.*]

**4. PARTITION (§ 111*) — SALE — PURCHASER AT PRIOR EXECUTION SALE — RIGHTS.**

The right of the holder of a certificate of execution sale of an undivided interest in land, which was the subject of partition, to share in the proceeds of the partition sale to the extent of his bid, was not lost to him because 10 years from the docketing of the judgment under which he claimed had passed before the partition sale; but he did not become vested with the entire proceeds, as might have been the case if his purchase had been consummated by expiration of the redemption period and delivery to him of the sheriff's deed.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 401–418; Dec. Dig. § 111.*]

**5. PARTITION (§ 111*)—JUDGMENTS—PRIORITIES—EXECUTION—PROCEEDS OF PARTITION SALE.**

Where the lien arising out of the judgment acquired by the certificate holder on execution sale of an undivided interest in land was diverted from the land to its proceeds by a partition sale, and such proceeds were insufficient to pay the lien of two other judgments which attached to the land simultaneously with that on which such purchaser relied, he was entitled to have his lien satisfied in full before any part of the proceeds were paid to the owner of the other judgments.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 401–418; Dec. Dig. § 111.*]

Partition by Tallman Hulbert against Fred Hulbert and others.   Application for distribution of proceeds of sale ordered according to opinion.

William F. Bacon, of Waterloo, in pro. per.
George E. Zartman, of Waterloo, for executors of Story.

SAWYER, J.   On the 7th day of March, 1904, a judgment in favor of St. Paul's Church of the village of Waterloo, N. Y., was recovered against the defendant Fred Hulbert and docketed in Seneca county clerk's office, and upon the 21st day of April following one Leonard Story obtained against him two judgments, which were, upon that day, also docketed in said clerk's office.  Subsequently, and on February 21, 1910, the father of the defendant died, leaving certain lands in the county of Seneca, which have become the subject of this action, and in which defendant acquired by inheritance from his father an undivided one-third interest.

Some time later and in November, 1913, an execution for the collection of the St. Paul's Church judgment was issued and delivered to the sheriff of Seneca county, who, after the advertisement, upon February 6, 1914, sold the defendant's interest in the premises to one William F. Bacon, who thereupon received and now holds a sheriff's certificate of sale.   This action was begun after the issuance of such execution and before the sale thereunder, was duly prosecuted to judgment, and a sale of the lands had upon March 28, 1914.   It having been made to appear that these liens existed against the interest of defendant Hulbert in the lands, his share of the proceeds of the sale, amounting to $1,753.36, was paid into the court, and this controversy has now arisen over the order in which the fund shall be distributed.

Leonard Story died upon the 22d day of February, 1914, and following his death the action had proceeded without amendment, his executors not having been substituted or made parties thereto.   After the execution sale, Mr. Bacon voluntarily appeared in the action, made proof of his claim, and the final judgment provided that the moneys derived from the one-third interest of the defendant Hulbert should be considered as real estate and paid into court as belonging to the said Bacon under the sheriff's certificate of sale, subject, however, to the right of redemption of the defendant Fred Hulbert, and the further right of redemption of the defendant Leonard Story, as the owner of the unsatisfied judgments.

[1] Notwithstanding this attempt to recognize the interest of Mr. Bacon in the fund as being paramount, all parties have treated it as nugatory, and discussed the disposition of these deposited moneys without reference to that direction.   In so ignoring that part of the judgment counsel are fully justified, for that it is contrary to the provisions of the Code of Civil Procedure seems plain.   Sections 1561 to 1566 contemplate that, where the existence of liens shall be ascertained and reported to the court with their date, the final determination as to priority of one over the other shall be made upon an application for the distribution of the moneys.   Treacy v. Ellis, 45 App. Div. 492–496, 61 N. Y. Supp. 600.

[2-4] By his purchase at the execution sale Mr. Bacon became a substituted lienor in place of St. Paul's Church, and entitled to whatever rights it had in the land by virtue of its judgment.   The partition sale, however, placed the property itself beyond his reach, and his right then became simply one to share in the proceeds to the extent of his bid.   This was not lost to him because of the expiration before the par-

tition sale of ten years from the docketing of the judgment under which he claims; neither did it vest in him the entire proceeds, as might perhaps have been the case if his purchase had been consummated by the expiration of the redemption period and the delivery to him of sheriff's deed. Vaughn v. Ely, 4 Barb. 159; Smith v. Colvin, 17 Barb. 157; Spring v. Sandford, 7 Paige, 550; Elsworth v. Woclsey, 19 App. Div. 385, 46 N. Y. Supp. 486; Treacy v. Ellis, supra.

[5] The lien arising out of the judgment of St. Paul's Church having been diverted from the real estate of defendant to its proceeds, and those proceeds being insufficient for the payment in full of the three judgments involved, the question is presented as to whether those proceeds are to be first applied to the extinguishment of Mr. Bacon's lien, or whether they are to be applied ratably to the payment of all three. The liens of the three judgments attached to the land simultaneously. Matter of Hazard, 73 Hun, 22, 25 N. Y. Supp. 928, affirmed 141 N. Y. 586, 36 N. E. 739.

Concededly there is no priority of one over the other as against the proceeds of the partition sale, unless same has been brought about by the steps taken for the enforcement of that of St. Paul's Church. A judgment has only such lien as is given by statute, for at common law judgments were not liens upon real estate. No distinction existed, so far as their collection was concerned, between real and personal property. In either case it was necessary to "sue out an execution" and make a levy, and a lien did not attach until the levy was made. Atlas Refining Co. v. Smith, 52 App. Div. 109–114, 64 N. Y. Supp. 1044.

As relates to personal property the law remains in that particular unchanged, but by statutory enactment an entirely different situation now prevails concerning real estate. By chapter 105 of the Laws of 1801 (paragraphs 2, 3) a judge or other officer of a court of record was required to, when signing a judgment, set down in the "margin of the roll, or record where the same judgment shall be entered," the "day and year of his signing the same." The clerks were required to mark on the back of every roll filed with them "the time of filing the same," and during the term at which a judgment was rendered, "or within six days thereafter, make and put into an alphabetical docket" to be kept by them the particulars of such judgment. These paragraphs, read in connection with the first paragraph, provided that a judgment should not be a lien upon real estate until such formalities had been complied with. Waterman v. Haskins, 11 Johns. 228.

Further legislation relating to the docketing and the lien of judgments was had by chapter 386 of the Laws of 1840, sections 25 and 26 of which provide that, in addition to the requirements of the act of 1801, the clerk shall keep a separate book in which judgments shall be docketed, and that the hour and minute of the perfecting of the judgment shall also be noted. These general provisions relating to the entry and docketing of judgments are in substance continued in the Code of Civil Procedure (sections 1245, 1246 and 1250), and constitute our present law on this subject. Those adopted in 1840 were intended to obviate uncertainties which had arisen in the practical operation of the act of 1801, under which the clerk was permitted to make the neces-

sary entry in the judgment book at any time during the term or within six days thereafter. The clerks seem sometimes to have waited until a convenient opportunity presented itself, and then to have entered two or more judgments upon the same day, without reference to the time of their rendition. Judgments thus entered obtained no priority of lien the one over the other, and, the statute not having in terms provided that the hour and minute of the filing and docketing should be noted, the courts seem to have held that even if that precaution was taken it was unavailing for the purposes of establishing priority. Adams v. Dyer, 8 Johns. 347, 5 Am. Dec. 344.

It will be seen, therefore, that the act of 1801 altered the common-law rule, in that it obviated the necessity of an actual levy upon real estate under an execution, although for a number of years this seems to have been doubted (Wood v. Colvin, 5 Hill, 228–230), and made a judgment a lien upon real estate; the priority between such liens being determined only by the day of the filing of the roll and docketing. The act of 1840, besides requiring a separate docket book to be kept, added the provision that the hour and minute of the filing and docketing should be noted and taken into consideration in determining priority. So far as concerns judgment liens attaching simultaneously to real estate, both statutes are silent as to the rights of holders of such liens between themselves, and the Code of Civil Procedure is equally bare of reference to the subject.

As was to have been expected, however, following the enactment of the law of 1801, with its absence of requirement that hour and minute should be specified, the question soon came before the courts for adjudication. Adams v. Dyer, supra; Waterman v. Haskins, supra. One of these cases was decided in 1811, and the other in 1814. Both involved the question of priority of judgments attaching by operation of law simultaneously, and both recognized that, under the statute, no priority of lien existed, but held that the party who first set in motion the machinery for the enforcement of his judgment was, because of his superior diligence, entitled to preference; that where an execution had been issued, and the sheriff began to execute it, either by actual sale or by the preliminary steps necessary therefor, the scale of equal right was turned, and the party gained a priority by reason of his vigilance. This holding has remained undisturbed until now, and the rule seems, while not universal, to be the same as that adopted by the courts of many of our sister states (23 Cyc. 1380; 12 Am. & Eng. Ency. of Law [1st Ed.] 116; 17 Am. & Eng. Ency. of Law [2d Ed.] 796), as well as that recognized by the text-book writers to be the law in New York (1 Black, Judg. § 450).

Counsel for the executors of Mr. Story likens the situation of these three judgments to that of three mortgages recorded at the same instant, between which no superiority of lien is gained in favor of the one first foreclosed. The difference in the nature of the securities, together with the history of the laws relating to judgment liens and of those relating to mortgages, sufficiently indicates that this seeming similarity has no foundation in fact. But, were this otherwise, there having been no subsequent legislation concerning judgment liens of equal right, the

cases above discussed are in point. Their holding has never been disturbed by inconsistent statutes or contrary decisions, and I believe them to state the law as it now is. Adams v. Dyer, supra; Waterman v. Haskins, supra.

As heretofore pointed out, the claim of Mr. Bacon as a substantial lienor to have his lien satisfied in full was not defeated by the sale in partition. The priority between the liens was gained by the issuing of the execution to the sheriff (he having proceeded under it with promptness). The partition action was afterward brought, and I take it that subsequent acts of third parties cannot operate to defeat established lien rights. His lien against the share of defendant Fred Hulbert, together with those of the other judgments, was adjudicated in the action and followed the proceeds of that share into the county treasurer's possession. The only duty now resting upon the court is to determine the rank of the respective liens so established and direct payment accordingly. Spring v. Sandford, supra; Treacy v. Ellis, supra; Code Civ. Proc. §§ 1563, 1564.

The moneys heretofore paid into the Seneca county treasury as and for the share of the defendant Fred Hulbert in the proceeds of the sale in this action should be paid over to Mr. Bacon and to the executors of Leonard Story in the order of the preference of their respective liens as above indicated.

Order may be entered accordingly, and, unless agreed upon, may be settled on three days' notice.

Ordered accordingly.