In the Matter of GWLADYS C. BARBER, Petitioner. COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

Supreme Court, Special Term, Albany County, May 6, 1948.

*Harold Swain* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Abraham Feinberg* of counsel), for respondent.

BOOKSTEIN, J. This is an application for an order, pursuant to section 1406 of the Abandoned Property Law, to review the determination of the Comptroller of the State of New York, which disallowed the claim of the petitioner herein, for the payment to her of a sum of money held by him as abandoned property, pursuant to sections 1000 and 1003 of the Abandoned Property Law.

The facts are not in dispute and a question of law only is present.

In a condemnation proceeding in Supreme Court, New York County, such proceedings were had that title to the lands sought to be acquired duly vested in the City of New York on June 1, 1897. An order confirming the report making the award for the property condemned was entered on June 4, 1903, in the New York County Clerk's Office. The report thus confirmed made an award to " Unknown owners " for Damage Parcel No. 123. That parcel was a part of Lot 13, Section 11, Block 3073, which said Lot 13 was at the time when the City of New York acquired the portion thereof aforesaid, subject to unpaid taxes. On May 2, 1912, the City of New York transferred its tax lien, against said Lot 13 (which included the aforesaid condemned portion thereof) to one Simeon M. Barber. Barber, on September 24, 1912, instituted an action to foreclose his tax lien which resulted in a sale of the portion of Lot 13 which remained unaffected by the condemnation proceeding. The referee's report of sale in the foreclosure action, filed on June 12, 1913, shows a deficiency, as of that date, of $2,192.70. No deficiency judgment was entered and no part of the deficiency has ever been paid. The award for the condemned portion of Lot 13 remained unclaimed in the hands of the City of New

York for nearly thirty-one years and was thereafter, and on April 26, 1944, pursuant to the provisions of sections 1000 and 1003 of the Abandoned Property Law, paid to the State Comptroller. Barber died on October 5, 1936, and his executor has duly assigned to the petitioner all claim which said Barber or his estate had in and to the aforesaid award, which is considerably less in amount than the deficiency already mentioned. Petitioner filed with the Comptroller her claim to the abandoned award on or about October 24, 1946. On or about March 7, 1947, the Comptroller denied the claim.

Thereafter a hearing was requested under section 1406 of the Abandoned Property Law and a hearing held on August 18, 1947, after which and on or about October 7, 1947, the Comptroller made his decision and determination, denying petitioner's claim. As conclusions of law, the Comptroller found that the tax lien was not valid and enforcible on October 24, 1946 (the date when the claim was filed with the Comptroller), and that the Statute of Limitations is applicable and that the petitioner's rights were barred twenty years after the order of confirmation of the award in the condemnation proceedings, which was entered June 4, 1903.

The Comptroller concedes that were this a claim for the abandoned fund in question made by the true owner of the condemned lands, the Statute of Limitations would not apply.

He contends that the rule is otherwise in the case of a claimant situated as is the petitioner herein.

Prior to the enactment of the Abandoned Property Law, it was the law that where a condemnation award was made to a known owner and not paid by the City of New York for more than twenty years, such owner's right to collect the award was barred by the Statute of Limitations, section 44 of the Civil Practice Act. (*Matter of City of New York [Elm St.]*, 239 N. Y. 220; *Matter of Mayor of City of New York [Elm St.]*, 246 N. Y. 72, 74.) This determination was based upon the proposition that the relation between the City of New York and the known owner was simply that of debtor and judgment creditor.

In the *Matter of City of New York (Rochester Ave.)* (241 App. Div. 614, affd. 264 N. Y. 607) where the award was made to unknown owners, the court held that the Statute of Limitations did not apply, since it was the duty of the city comptroller, under the city charter, to pay the award into Supreme Court, in which event the moneys would have become trust funds and no presumption of payment under section 44 of the Civil Practice Act would arise.

It is to be observed that in these cases, the question of the applicability of the Statute of Limitations arose between the City of New York and the owners, known or unknown, of the property condemned, and thereafter of the award.

In *Matter of Mayor of City of New York* (244 App. Div. 125, affd. 270 N. Y. 513), the conflict was between the representative of the deceased owner of the property and a person, who had the same relation to the matter as has the petitioner in the instant case. There one Crossin in 1911 obtained a transfer of the tax liens against the property condemned in 1906. She foreclosed the tax lien in 1913 and there was a resulting deficiency. It does not appear from the opinion whether the condemnation award was to known or unknown owners. The order confirming the award was not made until August 3, 1920. Apparently Crossin filed a notice of lien against the award more than twenty years after the deficiency arose but within the period of twenty years from the date of the order confirming the award. The representative of the deceased owner resisted payment of the claim on the ground that the Statute of Limitations, section 44 of the Civil Practice Act, applied. The court held that (p. 126): " Until the order was made confirming the awards, there was no person against whom, nor was there any fund from which, the appellant could have satisfied these deficiencies. The awards were the equivalent of all the rights which were impaired or destroyed in the proceedings, including the appellant's liens. * * * The Statute of Limitations would not bar these rights until twenty years thereafter."

Petitioner's status is the same as Crossin in the last case cited, i.e., she is the assignee of a tax lien, which was foreclosed, resulting in a deficiency, which became an equitable lien. According to the holding in the last case, her claim was barred on June 4, 1923, since the order of confirmation was made on June 4, 1903; even if it could be said that the statute did not commence to run until the deficiency arose on June 12, 1913, the claim would have been barred on June 12, 1933, unless the Statute of Limitations is not applicable for some reason or other.

Claimant claims it is not applicable for two reasons, viz., (1) that the award was to unknown owners and hence the city comptroller should have deposited the award in court, so that they would have become trust funds, in which event, the Statute of Limitations would be inoperable and (2) that under the Abandoned Property Law, pursuant to which the fund has been deposited with the respondent, the State Comptroller, the Statute of Lmitations is also inoperable.

The Abandoned Property Law, in substantially its present form, was enacted April 23, 1943, to take effect June 1, 1944 (L. 1943, ch. 697).

Pursuant to its provisions, on April 26, 1944, the comptroller of the city of New York, paid the abandoned fund in question over to the State Comptroller.

In another case, after the effective date of the Abandoned Property Law, and in the year 1944, the comptroller of the city of New York paid over to the State Comptroller, as abandoned property, a condemnation award made in 1916 and concededly never paid to the owner of the condemned property, New York University, which was a known owner. New York University filed a claim with the State Comptroller for the fund, payment of which was denied on account of the Statute of Limitations. Obviously, had New York University applied to the City of New York in 1936 or thereafter and prior to the payment of the award to the State Comptroller, the City of New York could have refused payment, by reason of the Statute of Limitations. (*Matter of City of New York* [*Elm St.*], 239 N. Y. 220.)

Special Term confirmed the determination of the Comptroller. (*Matter of New York University* [*State Comptroller*], 185 Misc. 40.)

The Appellate Division reversed the Special Term and its reversal was affirmed by the Court of Appeals. (*Matter of New York University* [*State Comptroller*], 271 App. Div. 131, affd. 296 N. Y. 913.)

In reversing the Special Term, the Appellate Division held that the Abandoned Property Law itself contains no time limitation barring the claim and nothing therein indicates a legislative intent to grant to the State Comptroller the limitation and presumption prescribed by section 44 of the Civil Practice Act.

Indeed that court said, at page 133: " As regards the payment of the award to respondent, the bar of the statute was removed and the fiction of its payment done away with. (Abandoned Property Law, § 1400.)"

By reason of that decision, petitioner now asserts that respondent cannot disallow her claim, on the basis of the Statute of Limitations, and, at first blush, such contention would seem to be sound.

On more careful analysis, however, grave doubt is cast upon the correctness of such a contention. If the decision in *Matter of New York University* (*State Comptroller*) (*supra*) means that the Statute of Limitations is abrogated as to any and every

claimant, then, of course, petitioner is entitled to the relief sought.

However, an analysis of the opinion in that case reveals that the court was dealing with a claimant who was the known owner of the abandoned award. The rationale of the opinion is predicated on the fact that the relation between the City of New York and the known owner was that of debtor and creditor. The court said at page 133: " The latter was the owner of a debt in judgment which was owing from and docketed against the city, but which was unenforcible by reason of the bar of a statute of limitation, and was legally unpayable by the city by operation of that statute's enactment of a conclusive presumption or fiction of its payment. *The debt itself, however, existed.* * * * The statute as one of limitation, of course, neither paid nor extinguished the debt. * * * The enactment of the new statute in 1943 radically altered its status and changed the situation. *As regards the payment of the award to respondent, the bar of the statute was removed and the fiction of its payment done away with.*" (Emphasis supplied.)

This determination is clearly to the effect that as between the one owing the amount of the award (the debtor) and the one to whom it is due, i.e., a known owner of the property condemned (the creditor), the Abandoned Property Law has abrogated the Statute of Limitations.

In that case it was held further that the Statute of Limitations, as between a debtor and creditor, is available as a bar, only as between the original parties, i.e., the debtor and the creditor or their privies and that as regards the original obligation from the City of New York to New York University, no privity of estate in the State Comptroller existed.

At page 134, the court said: '' Indeed, one of the purposes of the Abandoned Property Law may be said to be to provide generally with respect to certain stale claims *and in certain cases, such as the one at hand,* to bring about their liquidation and payment to the State under its declared policy, *and in so doing to provide for just and constitutional protection as regards the interests of the true owners.*'' (Emphasis supplied.)

Does this mean that the statute is abrogated only as to the one *who owned the property condemned, or that it is abrogated as to all persons, including an equitable assignee of a tax lien deficiency, such as petitioner?*

This court is constrained to hold that the abrogation of the Statute of Limitations by the Abandoned Property Law is limited to the owner of the property condemned and which the award replaces.

The entire rationale of the opinion which led to the result in *Matter of New York University (State Comptroller)* (*supra*) seems clearly so to indicate.

Here, there is no relation of debtor and creditor between petitioner and the owner, known or unknown, of the property condemned and of the award which took its place; or between the petitioner and the City of New York.

In the case of the owner, as was so well pointed out in *Matter of New York University (State Comptroller)* (*supra*), the Statute of Limitations accomplishes two things, viz., (1) it bars the remedy of enforcing payment of a debt; (2) it creates the fiction of payment of the debt. But it neither pays nor extinguishes the debt. Its whole effect is to deprive a claimant of his remedy.

In the instant case, there is no debt due to petitioner from anybody. Petitioner could not reduce her deficiency to judgment.

" In considering that question it must be remembered that no provision was made nor could have been made for the docketing of any deficiency judgment because no one was personally liable on the tax liens. Necessarily, therefore, the deficiencies established on the foreclosures did not constitute judgments ' for a sum of money or directing the payment of a sum of money ' to which section 44 of the Civil Practice Act would apply. * * * *Until the order was made confirming the awards, there was no person against whom, nor was there any fund from which, the appellant could have satisfied these deficiencies.* The awards were the equivalent of all the rights which were impaired or destroyed in the proceedings, including the appellant's liens. * * * The Statute of Limitations would not bar these rights until twenty years thereafter." (*Matter of Mayor of City of New York*, 244 App. Div. 125, 126, *supra*.) (Emphasis supplied.)

So here the petitioner has no personal claim against the owner of the condemned property, known or unknown, or any other person. Her predecessor had merely a statutory tax lien against the condemned property or its equivalent, the award, and thereafter an equitable lien for the deficiency arising upon the foreclosure of the statutory tax lien, and petitioner became the assignee of that equitable lien.

Petitioner, during the statutory period of the existence of her lien, and before the City of New York paid over the award, could have instituted an appropriate action to adjudge her interest in the award and directing payment thereof. (*Merriman* v. *City of New York*, 227 N. Y. 279, 288.)

Instead she and her predecessor in title of the equitable lien slept on their rights.

Now the fund is in the hands of the State for the purpose of " protecting the interest of the *owners* thereof " (Abandoned Property Law, § 102 [italics supplied]) to whom " the state shall hold itself responsible for the payment ". (Abandoned Property Law, § 1404, subd. 1, par. [ii].)

In *Matter of New York University* (*State Comptroller*) (*supra*) if the Comptroller's defense were sustained, the true owner would have been deprived of his property and of the award which it replaced and it would have been forfeited to the State. In the instant case, the application of the Statute of Limitations results in preserving the property, or more accurately the award which it replaced, for the real owner thereof.

In that case, the rule that the Statute of Limitations was abrogated was applied in favor of an owner and not of an equitable lienor.

Petitioner contends that if the fund had been deposited by the city comptroller in the court and trust fund, the Statute of Limitations would not have been operable and that since that was not done, it should also now be inoperable under the rule in *Matter of City of New York* (*Rochester Ave.*) (*supra*); that in such case, after payment to the State Comptroller, the fund would have continued as a trust fund, and hence the Statute of Limitations would not be operable. Payment to the State Comptroller, does not, by its provisions, make an abandoned fund, turned over to him, a trust fund, *subject to the order of the court.* Indeed, the only jurisdiction of the court with reference to abandoned funds paid to the State Comptroller is to review a determination of the Comptroller in disposing of a claim thereto.

As a matter of fact, section 1000 of the Abandoned Property Law now requires the treasurer of the city of New York to pay over to the State Comptroller, out of the court and trust funds in his custody, any abandoned awards, after which such payment they no longer constitute court and trust funds subject to the order of the court.

As to such trust fund, the Statute of Limitations did not run as against the *owner* thereof. (*Matter of City of New York* [*Rochester Ave.*], 241 App. Div. 614, affd. 264 N. Y. 607, *supra*.)

As to abandoned property funds, when paid to the State Comptroller, the Statute of Limitations is abrogated, as to the *owner* thereof. (*Matter of New York University* [*State Comptroller*], *supra*.)

As to an equitable lienor, the Statute of Limitations was applicable twenty years from the date of the order confirming an award. (*Matter of Mayor of City of New York*, 244 App. Div. 125, affd. 270 N. Y. 513, *supra.*)

No distinction has ever been made, so far as this court is able to discover, in the case of an equitable lienor and the application of the Statute of Limitations as to such a lien, between a situation where the municipality condemning the real property retains the amount of the award in its possession and where it pays it over to a court and trust fund.

In the case of an owner, the Statute of Limitations only precludes the remedy to enforce payment of the debt; it does not extinguish it. In the case of a tax deficiency equitable lien, the claim is in rem and not in personam and the Statute of Limitations not only precludes the remedy but also extinguishes the lien.

In the case of a known owner, such as in the case of *Matter of New York University (State Comptroller) (supra)*, to sustain the Comptroller's assertion of the Statute of Limitations would result in depriving the true owner of his property, for the benefit of the State.

To sustain such an assertion in a case such as this, against a tax deficiency equitable lien, is to preserve the fund for the true owner of the fund, which replaced his condemned real property.

The owner would have the right to assert the Statute of Limitations as a bar to the lien; the State Comptroller has the right and the duty to assert it for the benefit of such owner, in view of the declared policy of the Abandoned Property Law (§ 102).

This court finds nothing to the contrary in the cases cited by petitioner to sustain her claim.

In *Utter* v. *Richmond* (112 N. Y. 610), the Statute of Limitations was not involved, the award having been confirmed in 1880, and the lienor having proceeded against the fund within twenty years thereafter. Moreover, in that case there was a debt in the form of a bond, secured by a mortgage. While the mortgagee waived the right to a personal judgment, the debt nevertheless existed to the extent that it could be satisfied out of the condemnation award.

In *Matter of City of Rochester* (136 N. Y. 83, 90), the Statute of Limitations also was not involved. There a water right was condemned and the award paid into court. A mortgagee, who was a secured creditor, was held to be entitled to resort to the fund in place of the property condemned. That is elementary, in accord with the general proposition that the fund replaced the land and remained in the hands of the court for distribution.

In *Matter of City of New York* (*Houghton Ave.*) (266 N. Y. 26), the purchaser of a tax lien was held entitled to resort to the award but the Statute of Limitations was not involved. The awards were confirmed October 20, 1915, and June 28, 1916. The lienor instituted a proceeding within twenty years thereafter.

*Treacy* v. *Ellis* (45 App. Div. 492) is also inapposite. There the judgment of partition and sale was held to operate to transfer to the judgment creditors, to the extent of their judgments, the moneys deposited in court, and not simply as a substitution of a general lien upon such moneys for the general lien of the judgments upon the real estate, and hence the ten-year Statute of Limitations as to liens against real estate did not apply.

The determination of the State Comptroller is confirmed, with $25 costs.

Submit order.